# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA



| | |
|---|---|
| **UNITED STATES OF AMERICA, et. al.,** | § |
| **Plaintiffs,** | § |
| | § |
| | § |
| **V.** | § |
| | § |
| **BANK OF AMERICA CORP., et. al.,** | § |
| **Defendants,** | § |
| | § |
| **And** | § **Cv No.1:12-cv-00361-RMC** |
| | § |
| | § |
| **Morris Coe - Bey, Suad Zainab Bah-soon - Bey, Pletze Brown - Bey, Steven Crear, Sr. - Bey, Dwayne Gillespie - Bey, Vernita Hudson - Bey, Maurice Odongo - Bey, Claudier Reece - Bey, Talance Saw-yer - Bey, Yada Smith - Bey, Rose Starnes - Bey, Homer Thomas - Bey, Nicqueshia Thomas - Bey, Angula Torrance - Bey, Emmett Washington El-- Bey, Suzette Woods - Bey, an affected group of Ab-original Sovereign Indigenous Muur/Moors. Proposed Intervenors.** | § § § § § § § § § § § § § |

RECEIVED
Mail Room

MAR 2 8 2013

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

## MOTION TO INTERVENE

**COMES NOW** Intervenors' Morris Coe - Bey, Suad Zainab

Bahsoon - Bey, Pletze Brown - Bey, Steven Crear, Sr. - Bey, Dwayne

Gillespie - Bey, Vernita Hudson - Bey, Maurice Odongo - Bey, Claudier

Reece - Bey, Talance Sawyer - Bey, Yada Smith - Bey, Rose Starnes - Bey,

Homer Thomas - Bey, Nicqueshia Thomas - Bey,  Angula Torrance - Bey, Emmett Washington El-Bey, Suzette Woods - Bey, are an affected group of Aboriginal   Sovereign  Indigenous  Muur/Moors  and  National  to  United States. Intervenors' affirm that they possess full Sovereign Immunity and have Indigenous Rights by virtue of their Sovereign Indigenous Nation. Being forged Under The United Nations Decade of Indigenous People. The Aboriginal  Republic  of  North  America,  (ARNA)  and  the  International Society of Indigenous Sovereigns (ISIS) are under the Supreme laws and Treaty  of the United States of America: appear in Propria Persona, hereby files a Motion to Intervene.

## **BACKGROUND**

The  Plaintiff's,  the  United  States  Attorney  General,  and  49  State Attorney Generals (Oklahoma declined to join the suit) filed suit, in the District of Columbia, against the Five major Banks( Defendant's listed herein the consent judgment)[1] for, inter alia:

a. failing to properly identify the foreclosing party;
b. charging improper fees related to foreclosures;
c. preparing, executing, notarizing or presenting false and misleading documents, filing false and misleading documents with courts and government agencies, or otherwise using false or misleading documents as part of the foreclosure process (including, but not limited to, affidavits,

---

[1] This Consent Judgment also included all the subsidiaries of the five main global financial institutions, including the mergers and buyouts.

declarations, certifications, substitutions of trustees, and
assignments);

d. preparing, executing, or filing affidavits in foreclosure proceedings
without personal knowledge of the assertions in the affidavits and without
review of any information or documentation to verify the assertions in such
affidavits. This practice of repeated false attestation of information in
affidavits is popularly known as "robosigning." Where third parties engaged
in robosigning on behalf of the Banks, they did so with the knowledge and
approval of the Banks;

e. executing and filing affidavits in foreclosure proceedings that were not
properly notarized in accordance with applicable state law;

f. misrepresenting the identity, office, or legal status of the affiant executing
foreclosure-related documents;

g. inappropriately charging servicing, document creation, recordation and
other costs and expenses related to foreclosures; and

h. inappropriately dual-tracking foreclosure and loan modification activities,
and failing to communicate with borrowers with respect to foreclosure
activities.

## PARTIES

Proposed Intervenors' all reside in the State of Texas {Republic}.

Plaintiff, United States Attorney General Eric Holder acting in his official

capacity, has his office in the District of Columbia.

Plaintiffs', The Office of Attorney Generals' for Forty-nine States,

excluding Oklahoma, acting in their official capacity, have their office in

their respective State.

Defendant Bank of America Corporation("BOA") is a diversified global

financial services company and a bank holding company. It is a Delaware

corporation headquartered in Charlotte, North Carolina. Defendant Bank of

America, N.A. is a national banking association headquartered in Charlotte, North Carolina.  BAC Home Loans Servicing, L.P. was a servicing company that had formerly been known as Countrywide Home Loans Servicing, L.P. It was a Texas limited partnership with its principal place of business in Plano, Texas. It was, for a time, a wholly owned subsidiary of Bank of America, N.A. In July 2011, it was merged into Bank of America, N.A.

Defendant Citigroup Inc. is a diversified global financial services company. It is a Delaware corporation headquartered in New York City. Citibank, N.A. is a national banking association. It is Citigroup Inc.'s primary U.S. subsidiary depositor institution. It is headquartered in New York City. Citibank, N.A. is a wholly owned indirect subsidiary of Citigroup, Inc. It provides residential real estate lending.  CitiMortgage is a New York corporation, wholly owned indirect subsidiary of Citigroup, Inc., and is a residential mortgage loan servicing company headquartered in O'Fallon, Missouri. Collectively the three Defendants identified in this paragraph are referred to here as "Citigroup." The business of Citigroup and its subsidiaries and affiliates, includes the origination and servicing of mortgage loans.

Defendant J.P. Morgan Chase & Company is a diversified global financial services firm. It is a Delaware corporation, headquartered in New York, New

York. On May 30, 2008, J.P. Morgan Chase & Company acquired The Bear Stearns Companies Inc. (now the Bear Stearns Companies LLC) by merger, including its subsidiary EMC Mortgage Corporation (now EMC Mortgage LLC). Defendant JPMorgan Chase Bank, N.A. is a national banking association. It is headquartered in Columbus, Ohio. On September 25, 2008, Washington Mutual Bank., F.S.B., a federal savings bank headquartered in Henderson, Nevada, failed, and J.P. Morgan Chase Bank, N.A., purchased substantially all of the assets and assumed all deposit and substantially all other liabilities of Washington Mutual Bank., F.S.B., pursuant to a Purchase and Assumption Agreement with the Federal Deposit Insurance Corporation (FDIC) and the FDIC as Receiver for Washington Mutual Bank, F.S.B. Collectively the two Defendants identified in this paragraph are referred to here as "J.P. Morgan." The business of J.P. Morgan and its subsidiaries and affiliates includes the origination and servicing of mortgage loans.

Residential Capital, LLC is a residential real estate finance company. It is a Delaware limited liability company headquartered in Minneapolis, Minnesota. It is a wholly owned subsidiary of GMAC Mortgage Group, LLC. Defendant Ally Financial, Inc. (formerly GMAC, Inc.) is a diversified financial services firm. It is a Delaware corporation headquartered in Detroit, Michigan. Defendant GMAC Mortgage, LLC is a financial services

company that engages in origination and servicing of residential mortgages. It is a Delaware limited liability company headquartered in Fort Washington, Pennsylvania. It was formerly known as GMAC Mortgage Corporation. GMAC Residential Funding Co. LLC is a residential mortgage servicing company. It is a Delaware corporation headquartered in Minneapolis, Minnesota. Collectively the four corporations identified in this

paragraph are referred to here as "GMAC." The business of GMAC and its subsidiaries and affiliates includes origination and servicing of mortgage loans.          Defendant Wells Fargo & Company is a diversified financial services company. It is a Delaware corporation, headquartered in San Francisco, California.   Wells Fargo Bank, N.A. is a national banking association and a subsidiary of Wells Fargo & Company. Wells Fargo & Company is the successor in interest to Wachovia Corporation, a diversified financial services company headquartered in Charlotte, North Carolina. Wachovia Corporation was acquired by Wells Fargo & Company in 2008. Collectively the two corporations identified in this paragraph are referred to here as "Wells Fargo." The business of Wells Fargo and its subsidiaries and affiliates includes the origination and servicing of mortgage loans.

# I.
## FACTUAL ALLEGATIONS

### A. Facts related to Intervenors' Motion to Intervene

#### a) Morris Coe - Bey

On January 27, 2011 Morris Coe - Bey mailed, via certified mail, a Qualified Written Response("QWR") to Defendants' JPMC and BOA[2], seeking documentation from his mortgages from them. Said defendants' summarily denied/ dismissed or otherwise ignored Intervenor Coe - Bey's QWR requests.

#### b) Suad Bahsoon - Bey

On or about June 4, 1999 Intervenor Suad Bahsoon obtained a loan using her home located at 1809 Mapleleaf Drive, Garland, Texas 75040   as security under Article XVI § 50(a)(6) of the Texas Constitution.

The loan was evidenced by Intervenor Bahsoon, who signed a Promissory Note, promising to pay a principal balance of $123,800.00 over a  thirty year period to Provident Home Loans, a division of Provident Funding Associates, LP.

On or about January 19, 2012 Stephen Porter, an employee of  the law firm of Barrett Daffin Frappier Turner & Engel L.L.P. and known

---

[2]   Morris Coe, also submitted a QWR requests to numerous other Mortgage lenders,

Robosigner, allegedly signed an appointment of Substitute Trustee, on behalf of defendant Wells Fargo Bank NA, as Vice President of Loan documentation of Defendant Wells Fargo Bank NA.

Defendant Wells Fargo Bank NA'S counsel, on or about March 2, 2012, initiated foreclosure proceedings against Intervenor Bahsoon - Bey's home, and in doing so, acknowledged Intervenor Bahsoon - Bey's Request for documents involving the chain of title and assignment of note. False Documents were used in foreclosure proceedings.

### c) Pletze Brown-Bey

On October 6, 2002 Intervenor Pletze Brown - Bey purchased a home located at 2412 Poinciana Lane, Dallas, Texas 75212.

On August 28, 2009 Defendant Citi Group, initiated foreclosure proceedings and On October 6, 2009 the subject property went to foreclosure sale.

On September 25, 2009 Intervenor Brown - Bey mailed, via certified mail, a "Conditional Acceptance Administrative Procedure" requesting mortgage documentation.

On December 14, 2009, Defendant Citi's counsel answered said

servicers and subsidiaries involved.

"Conditional Acceptance Administrative Procedure" , with a one page response stating that it had no legal effect. Fraudulent documents were submitted by defendant Citi in Intervenor's foreclosure proceedings.

### d) Steven Crear, Sr. - Bey

On or about April 26, 2005 Intervenor Crear - Bey obtained a loan using his home located at 1617 Gillarel Springs Lane, Dallas, Texas 75241 ("Subject Property") as security. Intervenor Crear - Bey signed a promissory note ("Note") requiring him to pay $114,400.00 over a thirty(30) year period. Bank of America NA, initiated a fradulant foreclosure through it's agents or substatute trustee's on 6703 Old Ox Dallas, Texas (Republic) 75241, without proof of original assignment or note.

On or about July 14, 2005 Elizabeth A. Proctor, an Assistant Secretary for Long Beach Mortgage Company submitted in a "Certificate of Assistant Secretary" as proof that WaMu "owned" Long Beach Mortgage Company's Mortgage loans. A document purporting to be an assignment of the Note and Deed of Trust from WaMu to JPMC was executed on or about January 23, 2009. On May 14, 2009 Intervenor Crear - Bey requested in writing that he be given copies of the Original Note and Deed of Trust along with copies of all transfer documents showing all transfers and assignments of the Original Deed of Trust and Original Note, concerning subject property.

On or about July 29, 2010 Defendant JPMC dba Washington Mutual Bank ("WaMu") begin initiating  non-judicial foreclosure proceedings on subject property. The application was presented through  Selim Taherzadeh, an employee of the law firm Brice, Vander Linden & Wernick, P.C. falsified documents were used in Intervenor's foreclosure proceedings

### e) Dwayne Gillespie - Bey

Intervenor Dwayne Gillespie-- Bey entered into an agreement to purchase the home located at 409 Allerton Lane, Lancaster, Texas 75146.

On January 20, 2012 Defendant Wells Fargo initiated foreclosure proceedings  against Intervenor Gillespie - Bey's home mortgage.

On February 23, 2012 Intervenor Gillespie - Bey mailed a QWR, via certified mail, to Defendant Wells Fargo, to which defendant Wells Fargo summarily denied/dismissed or otherwise ignored Intervenor Gillespie - Bey's  mortgage documentation request. Fraudulent documents were submitted in Intervenor's foreclosure proceedings.

### f) Vernita Hudson - Bey

On or about May 30, 2007 Intervenor Vernita Hudson negotiated a loan to purchase real property with Fieldstone Mortgage Company in the amount of $78,000.00. In that negotiation Intervenor Hudson signed a negotiated "Promissory Note" payable to Fieldstone Mortgage Company.

Intervenor Hudson's real property is located at 1229 Southridge Drive, Lancaster, Texas 75146.

On May 8, 2009 an "Assignment of mortgage was signed by a MERS representative in an attempt to transfer/assign Intervenor Hudson's "Deed of Trust" and "Promissory Note" to Defendant Citi.

On February 28, 2011 counsel for Defendant Citi initiated foreclosure proceedings, using fraudulent documentation.

## g) Maurice Odongo - Bey

On or about June 23, 2005 Intervenor Maurice Odongo obtained a loan using his home located at 2415 Poinciana Place , Dallas, Texas 75212 ("Subject Property") as security. Intervenor Odongo signed a promissory note ("Note") requiring him to pay $166,250.00 over a thirty(30) year period.

On or about July 7, 2005 Magda Villanueva, a Shipping Manager for New Century Mortgage corporation, transferred the subject property's Deed of Trust to Mortgage Electronic Registration Systems("MERS").

On December 29,2009 a Notice of Default was sent to Intervenor Odongo. Intervenor Odongo's Deed of Trust was assigned to US Bank NA in May, 2010. Fraudulent documentation was used against Intervenor in the foreclosure proceedings.

### h) Claudier Reece - Bey

On July 27, ,1995, Intervenor Reece - Bey purchased a home located at 6921 Gettysburg Drive, Forest Hills, Texas 76140 from Ford Consumer Finance, in the amount of $43,750,086.00.

On April 11, 2011 Intervenor Reece - Bey requested mortgage documents from Defendant Citi and no response was ever given. Falsified documents and testimony were submitted in foreclosing on Intervenor's property.

### i) Talance Sawyer - Bey

Intervenor Talance Sawyer  has an address of 1613 Mustang Ct. Cedar Hill, Texas 75104.

Prior to November 12, 2006 Intervenor Sawyer purchased certain real property commonly known as (the "Subject Property"), from  Financial City Mortgage, Inc. for a total of $480,000.00 (Loan No 0697465078).

The  original  beneficiary/mortgagee  was    Long  Beach  Mortgagee Company and the current beneficiary/mortgagee is  Deutsche Bank National Trust Company.

The original mortgage servicer was defendant Washington Mutual Bank DBA as defendant J.P. Morgan Chase Bank.

On or about March 17, 2009 the mortgage servicer Washington Mutual (WAMU) initiated a default notice and intent to foreclose on subject

property. Fraudulent documents were used to justify the foreclosure of Intervenor's mortgage property.

## j) Yada Smith - Bey

Intervenor Yada Smith - Bey, on May 4, of 2006, entered into a mortgage agreement With Everett Financial Inc DBA Supreme Lending and BNC Mortgage.

On May 4, 2006 a Deed of Trust was executed, naming BNC Mortgage, inc., as the lender and the Mortgage Electronic Registration System ("MERS") is described as beneficiary of this Security Instrument(solely as nominee for Lender and Lender's successors and assigns) and the assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.

On May 5, 2006 Intervenor Smith signed a settlement statement with HUD (Respa) naming BNC as Lender, for the sum of $99,897.04, in purchasing the property located at 906 Ponds Court, Cedar Hill, Texas 75104.

After a loan modification, another Deed of Trust was executed, on August 27, 2007, listing the Beneficiary as Beneficial Texas, Inc.

On May 17, 2011 Defendant BFI/BOA mailed Intervenor Smith - Bey a "Notice of Right to Cure Default" instructing Intervenor of their intention to accelerate the maturity of the note if the delinquency was not corrected. Fraudulent documents were used to foreclose on Intervenor's property.

### k) Rose Starnes - Bey

On or about December 1, 2005 Intervenor Rose Starnes - Bey obtained a loan using her home located at 2440 Arroyo Springs Dr., Grand Prairie, Texas 75052 ("Home") as security under Article XVI §50(a)(6) of the Texas Constitution.

The loan was evidenced by Intervenor Starnes - Bey who signed a Promissory Note("Note"), promising to pay a principal balance of $150,641.00 over a thirty year period to Long Beach Mortgage Company. Sometime, unknown to Intervenor Starnes - Bey, Long Beach Mortgage Company allegedly sold Intervenor's mortgage beneficial rights to an unknown investor, where it eventually allegedly ended up with JPMCB Intervenor Starnes - Bey sustained unforeseen financial difficulty and became delinquent on said loan.

On September 21, 2011 counsel for defendant JPMCB notified Intervenor Starnes - Bey of Defendant JPMCB's intention to initiate foreclosure of Intervenor's home property.

On or about  October 25, 2011 Inteervenor Starnes - Bey attempted to obtain, inter alia, copies of the original note and deed of trust via a qualified written response.("QWR").

On November 1, 2011 Defendant JPMCB responded to Intervenor's QWR in a perfunctory manner, denying or claiming  exemption from having to answer or produce various documents involved in the initial Mortgage Note.

On July 24, 2012 counsel for defendant JPMCB once again notified the Intervenor of their client's intention to begin foreclosure proceedings. Fraudulent documents and testimony was used against the Intervenor to foreclose on her property.

**m) Homer Thomas - Bey**

On or about June 29, 2012 Defendant Wells Fargo initiated foreclosure proceedings on Intervenor Homer Thomas - Bey's home, located at 606 Linkcrest Drive, Duncanville, TX 75137.

On August 28, 2012, Intervenor Thomas - Bey mailed, via certified mail, a QWR request, seeking mortgage documentation, which Defendant Wells Fargo summarily denied/dismissed or otherwise ignored. Fraudulent documents were submitted to justify the foreclosure

**n) Nicquesha Thomas - Bey**

On or about October 26, 2005, Intervenor Nicquesha Thomas - Bey obtained a loan using her home located at  1334 White Tail Ridge, Cedar Hill, Texas, as security.

Intervenor Thomas Bey signed a promissory note("Note") promising to pay a principal balance of  One Hundred Thirty Six Thousand, Six Hundred Fifty Three Dollars and Sixty  Cents.($136,653.60), over a thirty year period to CountryWide KB Home Loans.

On March 18, 2010 Defendant BOA initiated foreclosure proceedings on Intervenor Thomas - Bey's home. The foreclosure was filed by defendant BOA with assistance of counsel with the law firm of Barrett Daffin Frappier Turner & Engel, LLP.

On June 8, 2011 , a document purporting to be an assignment of the Note from Mortgage Electronic Registration Systems("MERS") to  Defendant BOA, was executed by Beverly Brooks. Robosigning and false document were used to foreclose against Intervenor's property.

**o) Angula Torrence - Bey**

On or about December 10, 2007 Intervenor Torrence - Bey purchased her home, located at 1001 Manchester Drive, Mansfield, Texas 76063.

On or about May 17, 2010 BOA initiated foreclosure proceedings against *Intervenor Torrence - Bey's Property. Fraudulent documents were submitted* and used to foreclose on Intervenor's property.

**p) Emmett Washington El-Bey**

On    December  24,  2001     Intervenor  Emmett  Washington  El-Bey purchased a home located at 409 Allerton Lane, Lancaster, Texas 75146.

On or about December 4, 2006 Intervenor Washington El-Bey mailed, via certified mail, a QWR request seeking mortgage documentation.

On December 14, 2006 Defendant BOA, via counsel,  denied/dismissed or otherwise ignored Intervenor Washington El-Bey's QWR documentation requests.

On  December  29,  2006  Countrywide  Home  Loans/ Defendant  BOA initiated foreclosure on Intervenor Washington El-Bey's mortgage, using falsified documentation.

**q) Suzette Woods - Bey**

On or about September 28, 1994 Intervenor Suzette Woods - Bey signed and entered into a original contract with lender Judith O. Smith Mortgage Group, Inc. of Arlington, Texas, in the amount of  $66,769.00, for subject property.

On or about October 4, 1994 lender Judith O. Smith Mortgage Group,

Inc., transferred the Promissory Note and Mortgage/Deed of Trust

to Lomas Mortgage USA,

On a date, unknown to Intervenor Woods - Bey, the Promissory Note and

Mortgage/Deed of Trust was allegedly   transferred to First Nationwide

Mortgage Corporation, who, on March 1, 2003, merged with CitiMortgage,

Inc (CMI), and as of April 1, 2003 CMI began taking loan payments.

Intervenor Woods - Bey was never timely notified of the transfers of

subject property's documents.

On July 4, 2011 Defendant CITI initiated foreclosure proceedings against

Intervenor Woods - Bey's property, using fraudulent documents to foreclose

on Intervenor's property.

Collectively and individually, the Intervenors attempted to have the

Monitor present their complaints to the Committee and/or Court for the

addressing of the Consent Judgment violations alleged herein. The Monitor

responded to the Intervenors letter complaints stating that he did not have

the power to help them other then putting it in his quarterly report. (Ex "A")

## B. Wrongful Conduct Related to Foreclosures

Under the Consent Judgment Agreement between the Plaintiff's and

Defendant's, the Defendants are prohibited from engaging in unfair or

deceptive practices with respect to consumers.

Each of the Defendants regularly conducts or manages foreclosures on behalf of entities that hold mortgage loans and have contracted with the Banks to service such loans.

In the course of their conduct, management, and oversight of foreclosures in the Intervenors' States, the Defendants have engaged in a pattern of unfair and deceptive practices, which violate the Consent Judgment they agreed to abide by.

The Defendants' failure to follow appropriate foreclosure procedures, and related unfair and deceptive practices include, but are not limited to, the following:

a. failing to properly identify the foreclosing party;

b. charging improper fees related to foreclosures;

c. preparing, executing, notarizing or presenting false and misleading documents, filing false and misleading documents with courts and government agencies, or otherwise using false or misleading documents as part of the foreclosure process (including, but not limited to, affidavits, declarations, certifications, substitutions of trustees, and assignments);

d. preparing, executing, or filing affidavits in foreclosure proceedings without personal knowledge of the assertions in the affidavits and without review of any information or documentation to verify the assertions in such affidavits. This practice of repeated false attestation of information in affidavits is popularly known as "robosigning." Where third parties engaged in robosigning on behalf of the Banks, they did so with the knowledge and approval of the Banks;

e. executing and filing affidavits in foreclosure proceedings that were not properly notarized in accordance with applicable state law;

f. misrepresenting the identity, office, or legal status of the affiant executing

foreclosure-related documents;

g. inappropriately charging servicing, document creation, recordation and other costs and expenses related to foreclosures; and

h. inappropriately dual-tracking foreclosure and loan modification activities, and failing to communicate with borrowers with respect to foreclosure activities.

Intervenors' Morris Coe - Bey, Steven Crear, Sr. - Bey, Talance Sawyer - Bey, and Rose Starnes - Bey were victims of Defendant JP Morgan Chase Bank ("JPMC") preparing, executing, notarizing or presenting false and misleading documents, filing false and misleading documents with courts and/or government agencies, or otherwise using false or misleading documents as

part of their foreclosure process (including, but not limited to, affidavits, declarations, certifications, substitutions of trustees, and assignments); preparing, executing, or filing affidavits in foreclosure proceedings without personal knowledge of the assertions in the affidavits and without review of any information or documentation to verify the assertions in such affidavits. This practice of repeated false attestation of information in affidavits is popularly known as "robosigning." Where third parties engaged in robosigning on behalf of the JPMC, they did so with the knowledge and approval of the JPMC; executing and filing affidavits in foreclosure proceedings that were not properly notarized in accordance with applicable state law; misrepresenting the identity, office, or legal status of the affiant

executing foreclosure-related documents.

Intervenors' Suad Zainab Bahsoon - Bey, Dwayne Gillespie - Bey, Homer Thomas - Bey, were victims of Defendant Wells Fargo preparing, executing, notarizing or presenting false and misleading documents, filing false and misleading documents with courts and/or government agencies, or otherwise using false or misleading documents as part of their foreclosure process (including, but not limited to, affidavits, declarations, certifications, substitutions of trustees, and assignments); preparing, executing, or filing affidavits in foreclosure proceedings without personal knowledge of the assertions in the affidavits and without review of any information or documentation to verify the assertions in such affidavits. This practice of repeated false attestation of information in affidavits is popularly known as "robosigning." Where third parties engaged in robosigning on behalf of the Wells Fargo, they did so with the knowledge and approval of the Wells Fargo; executing and filing affidavits in foreclosure proceedings that were not properly notarized in accordance with applicable state law; misrepresenting the identity, office, or legal status of the affiant executing foreclosure-related documents.

Intervenors' Yada Smith - Bey, Nicqueshia Thomas - Bey, Angula Torrance

- Bey, Emmett Washington El-Bey were victims of Defendant Bank Of America ("BOA") preparing, executing, notarizing or presenting false and misleading documents, filing false and misleading documents with courts and/or government agencies, or otherwise using false or misleading documents as part of their foreclosure process (including, but not limited to, affidavits, declarations, certifications, substitutions of trustees, and assignments); preparing, executing, or filing affidavits in foreclosure proceedings without personal knowledge of the assertions in the affidavits and without review of any information or documentation to verify the assertions in such affidavits. This practice of repeated false attestation of information in affidavits is popularly known as "robosigning." Where third parties engaged in robosigning on behalf of the Wells Fargo, they did so with the knowledge and approval of the Wells Fargo; executing and filing affidavits in foreclosure proceedings that were not properly notarized in accordance with applicable state law; misrepresenting the identity, office, or legal status of the affiant executing foreclosure-related documents.

Intervenors' Pletze Brown - Bey, Vernita Hudson - Bey, Claudier Reece - Bey and Suzette Woods - Bey were victims of Defendant CitiGroup("CITI") preparing, executing, notarizing or presenting false and misleading documents, filing false and misleading documents with courts and/or

government agencies, or otherwise using false or misleading documents as part of their foreclosure process (including, but not limited to, affidavits, declarations, certifications, substitutions of trustees, and assignments); preparing, executing, or filing affidavits in foreclosure proceedings without personal knowledge of the assertions in the affidavits and without review of any information or documentation to verify the assertions in such affidavits. This practice of repeated false attestation of information in affidavits is popularly known as "robosigning." Where third parties engaged in robosigning on behalf of the CITI, they did so with the knowledge and approval of the CITI; executing and filing affidavits in foreclosure proceedings that were not properly notarized in accordance with applicable state law; misrepresenting the identity, office, or legal status of the affiant executing foreclosure-related documents.

Intervenor Maurice Odongo - Bey was a victim of Defendant ALLY/GMAC ("ALLY") preparing, executing, notarizing or presenting false and misleading documents, filing false and misleading documents with courts and/or government agencies, or otherwise using false or misleading documents as part of their foreclosure process (including, but not limited to, affidavits, declarations, certifications, substitutions of trustees, and assignments); preparing, executing, or filing affidavits in foreclosure

proceedings without personal knowledge of the assertions in the affidavits and without review of any information or documentation to verify the assertions in such affidavits. This practice of repeated false attestation of information in affidavits is popularly known as "robosigning." Where third parties engaged in robosigning on behalf of the ALLY, they did so with the knowledge and approval of the ALLY; executing and filing affidavits in foreclosure proceedings that were not properly notarized in accordance with applicable state law; misrepresenting the identity, office, or legal status of the affiant executing foreclosure-related documents.

Intervenors', individually, challenged each of their illegal foreclosures and falsification of foreclosure documents by the Defendants', in the District Court of their respective County, and were each and every time denied the right to have their allegations be truly heard. Their case was subsequently dismissed and the Defendants' were allowed to proceed with foreclosure with falsified documentation and "robosigning" of affidavits and falsified assignment of mortgages, inter alia.

In February, 2012 the Five, herein listed Defendants' signed a settlement agreement, agreeing to pay Twenty Six (26) Billion dollars to the U.S. and Forty-nine States for the foreclosure abuses, and on April 4, 2012 the Court signed the Consent Judgment.

Compliance with the settlement will be overseen by Joseph A. Smith, who will serve as Monitor in enforcing the consent judgment. As North Carolina's banking commissioner since 2002, Smith oversaw implementation of a leading foreclosure-prevention program; he has also served as Chairman of the Conference of State Banks Supervisors and was President Obama's nominee to serve as Director of the Federal Housing Finance Agency. The Monitor will oversee implementation of the extensive servicing standards required by the settlement; impose penalties of up to $1 million per violation (or up to $5 million for certain repeat violations); and publish regular public reports that identify any quarter in which the Servicer fell short of the standards imposed in the settlement. The settlement, filed as a Consent Judgment in the United States District Court for the District of Columbia will remain in effect for three-and-a-half years.

## II.
## ARGUMENTS

### A. The Liberal Intervention Policies Underlying Fed. R. Civ. Pro. 24 Further Support Granting Intervention.

Addressing intervention as of right, Fed. R. Civ. Pro. 24(a) provides:

On timely motion, the court must permit anyone to intervene who: . . .
(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant"s ability to protect its interest, unless existing parties adequately represent that interest.
Fed. R. Civ. Pro. 24(a)(2).

Rule 24(a) is construed liberally in favor of granting intervention. **See United States v. City of Los Angeles, 288 F.3d 391, 397-98 (9th Cir. 2002); Southwest Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 818 (9th Cir. 2001).** The Proposed Intervenors easily meet Rule 24(a)(2)"s criteria. **See e.g., generally, Coalition for Responsible Regulation, Inc. v. EPA, D.C. Cir., No. 09-1322, Order (May 5, 2010) (Document No. 1243328) (granting States" motion to intervene in support of EPA"s Endangerment Determination made pursuant to CAA, § 202(a)).**

Fed. R. Civ. P. 24(a), which provides for permissive intervention, gives a federal court discretion to allow intervention when the proposed intervenor makes a timely application demonstrating that his "claim or defense and the main action have a question of law or fact in common." Thus, "a court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." **Northwest Forest Resource Council v. Glickman, 82 F.3d 825, 839 (9th Cir. 1996).** If these threshold requirements are met, deciding whether to grant permissive intervention is directed to the "sound discretion" of the court. **San Jose Mercury News, Inc. v. U.S. Dist. Court, 187 F.3d 1096, 1100 (9th Cir. 1999).**

All these threshold requirements are met here. First, Intervenors have independent grounds for jurisdiction as they stand to suffer direct and significant injury to their substantial efforts that .

## B. Plaintiffs' Are Not Adequately Representing Intervenors' Interests.

According to the Supreme Court, "[t]he requirement of the Rule is satisfied if the applicant shows that representation of his interest „may be" inadequate; and the burden of making that showing should be treated as minimal." **Trbovich v. United Mine Workers, 404 U.S. 528, 538 n.10 (1972).** A proposed intervenor need not show that the representation of its interest will in fact be inadequate. **See Diamond v. District of Columbia, 792 F.2d 179, 192 (D.C. Cir. 1986).** Moreover, "[a] governmental party that enters a lawsuit solely to represent the interests of its residents . . . differs from other parties, public or private, that assert their own interests, even when these interests coincide." **United States v. Hooker Chems. & Plastics Corp., 749 F.2d 968, 992 n.21 (2d Cir. 1984) (emphasis added).** Any doubts about intervention here should be resolved in favor of Proposed Intervenors. **See Federal Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist., 983 F.2d 211, 216 (11th Cir. 1993).**

Plaintiff's primary goal in their litigation- recovery of funds- does not adequately coincide with the Intervenors substantial interests. The law mandates that the Defendant's primary responsibility is to protect the public from  fraud. Their discretionary authority to attempt to obtain recompense for defrauded consumers is only ancillary and secondary to that principal responsibility. Consequently, there arise occasions, such as now, when the Defendant's interest in performing their primary responsibility may not coincide with a defrauded consumer's interest in achieving full compensation for the harm done to him or her.

## C. **Intervenors' Intervention Is Timely**

Intervenors' Motion to Intervene is timely because  Defendant's and Plaintiff's Consent Judgment proscribing a detailed plan of action for defendants' to implement to clean up their fraudulent foreclosure procedures, could not have been challenged earlier because the defendants' had not yet defaulted on their agreement to clean up their fraudulent foreclosing procedures. Thus, Intervenors could not have challenged their continued fraudulent foreclosure practices any earlier.

Moreover, Intervenors assert that their motion is timely based upon the fact that, in the instant case, the Court held, in paragraph Thirteen of the Consent Judgment that:

"13.   This Court retains jurisdiction for the duration of this Consent
Judgment to enforce it's terms.***"

**(See Exhibit "B")**

## D. Monitor System Failed Intervenors'

Explicitly state in in the final consent judgment is the Monitor's required

job detail, in enforcing violations of the consent judgment:

> 19. If the Monitor becomes aware of facts or information that lead the Monitor
> to reasonably conclude that Servicer may be engaged in a pattern of
> noncompliance with a material term of the Servicing Standards that is
> reasonably likely to cause harm to borrowers or with any of the Mandatory
> Relief Requirements, the Monitor shall engage Servicer in a review to
> determine if the facts are accurate or the information is correct.

**(Consent Judgment, Exhibit E, page 8)**

Clearly, it is obvious that the Monitor has the power to intervene on

behalf of the borrowers, yet when confronted with the complaints of sixteen

consumers, the Monitor turned a deaf ear and passed the buck, leaving the

Intervenors' to fend for themselves.

## E. This Court has Power to Correct deficiencies

This Court has the inherent power, by and through, the explicit

agreement entailed in the Consent Judgment to intervene on behalf  of

wronged borrowers:

"3. **Enforcement Action.** In the event of an action to enforce the obligations
of Servicer and to seek remedies for an uncured Potential Violation for
which Servicer's time to cure has expired, the sole relief available in such
an action will be:
(a) Equitable Relief. An order directing non-monetary equitable relief,
including injunctive relief, directing specific performance under

the terms of this Consent Judgment, or other non-monetary
corrective action.
(b) Civil Penalties. The Court may award as civil penalties an amount
not more than $1 million per uncured Potential Violation; or, in the
event of a second uncured Potential Violation of Metrics 1.a, 1.b,
or 2.a (*i.e.*, a Servicer fails the specific Metric in a Quarter, then
fails to cure that Potential Violation, and then in subsequent
Quarters, fails the same Metric again in a Quarter and fails to cure
that Potential Violation again in a subsequent Quarter), where the
final uncured Potential Violation involves widespread
noncompliance with that Metric, the Court may award as civil
penalties an amount not more than $5 million for the second
uncured Potential Violation.
Nothing in this Section shall limit the availability of remedial
compensation to harmed borrowers as provided in Section E.5."

**(Consent Judgment, Exhibit E, page 15) (Intervenor EX. ("C")**

This Court has jurisdiction to correct the deficiencies that the Intervenors

complain of herein. This Court should allow the proposed Intervenors

permission to enter the case and seek their lawful remedies as per agreed

upon, by all parties, including the Court.

## CONCLUSION

For the foregoing reasons, the Intervenors' respectfully request that this

Court grant their motion to intervene as party-Plaintiff's.

March 22, 2013                         Respectfully submitted,

**Morris Coe - Bey**
**524 Saddlehead Dr.**
**Desoto, Texas Republic  {75115}**


**Suad Zainab Bahsoon - Bey**
**1809 Mapleleaf Drive**
**Garland, Texas Republic  {75040}**

**Pletze Brown - Bey**
**2412 Poinciana Lane**
**Dallas, Texas Republic {75212}**


**Steven Crear, Sr. - Bey**
**1617 Gillarel Lane**
**Dallas, Texas Republic {75241}**

**Dwayne Gillespie - Bey**
**409 Allerton Lane**
**Lancaster, Texas Republic {75146}**

**Vernita Hudson - Bey**
**740 Beechwood Drive**
**Desoto, Texas Republic {75115-5829}**


**Maurice Odongo - Bey**
**2415 Poinciana Place**
**Dallas, Texas Republic {75212}**

**Claudier Reece - Bey**
**1912 Morrison Drive**
**Fort Worth , Texas Republic {76112}**

**Talance Sawyer - Bey**
**1613 Mustang Court**
**Cedar Hill, Texas Republic {75104}**

**Yada Smith - Bey**
**906 Ponds Court**
**Cedar Hill, Texas Republic {75104}**

**Rose Starnes - Bey**
**2440 Arroyo Springs Dr.**
**Grand Prairie, Texas Republic {75052}**

**Homer Thomas - Bey**
**605 Linkcrest, Drive,**
**Duncanville, Texas Republic {75137}**

**Nicqueshia Thomas - Bey**
**1334 White Tail Ridge**
**Cedar Hill, Texas Republic   {75140-1219}**

**Angula Torrance - Bey**
**1001 Manchester Drive,**
**Mansfield, Texas Republic {76063}**

_Emmett Washington Bey_

**Emmett Washington El-Bey**
**4306 Lauren Lane**
**Garland, Texas Republic {75043}**

_Suzette Woods Bey_

**Suzette Woods - Bey**
**2716 Gillespie CT.**
**Grand Prairie, Texas Republic75052-0730**

## CERTIFICATE OF SERVICE

We, the proposed Intervenors: Morris Coe - Bey, Suad Zainab Bahsoon - Bey, Pletze Brown - Bey, Steven Crear, Sr. - Bey, Dwayne Gillespie - Bey, Vernita Hudson - Bey, Maurice Odongo - Bey, Claudier Reece - Bey, Talance Sawyer - Bey, Yada Smith - Bey, Rose Starnes - Bey, Homer Thomas - Bey, Nicqueshia Thomas - Bey, Angula Torrance - Bey, Emmett Washington El-Bey, Suzette Woods - Bey, hereby certify that they mailed a true and correct copy of their "Motion To Intervene", addressed to the Office Of The United States Attorney General and to all the Offices of the Attorney General for the States of the United States, with the exception of Oklahoma, who was not a party to these pleadings, on this the $\underline{27}$ Day of March, 2013.


_Morris Coe Bey_
Morris Coe Bey


_Suad Z Bahsoon - Bey_
Suad Zainab Bahsoon - Bey


_Pletze Brown - Bey_
Pletze Brown - Bey


_Steven Crear_
Steven Crear, Sr. - Bey


_Dwayne Gillespie - Bey_
Dwayne Gillespie - Bey

_____
Vernita Hudson - Bey

_____
Maurice Odongo  - Bey

_____
Claudier Reece - Bey

_____
Talance Sawyer - Bey

_____
Nada Smith - Bey

_____
Rose Starnes - Bey

_____
Homer Thomas - Bey

_____
Nicqueshia Thomas - Bey

_____
Angula Torrance Bey

_____
Emmett Washington El-Bey

_____
Suzette Woods - Bey

# EXHIBIT "A"

Office of
**Mortgage Settlement**
Oversight

301 Fayetteville St., Suite 1801
Raleigh, NC 27601

T 919.825.4748
F 919.825.4650

mortgageoversight.com

January 23, 2013

Steven Crear, Sr. Bey
1617 Gillarel Lane
Dallas, TX 75241

RE: JP Morgan Chase

Dear Mr. Bey:

Thank you for your correspondence dated January 14, 2013.   We appreciate your taking the time to contact the Monitor's office.

The National Mortgage Settlement (NMS) created the Monitor to ensure that the servicers comply with its terms, not to intervene in individual customer disputes with servicers.   Therefore, the Monitor cannot mediate your complaint with the servicer on your behalf.   That said, the information you provided is important to the process of enforcing the NMS.   It will enable Mr. Smith to see firsthand how servicers are treating their customers.   With your information, as well as the information of others, Mr. Smith can determine whether there are patterns or practices of violations of the agreement.

Knowing of systemic violations will enable him to use the tools of the NMS to put a stop to them, which will help make the settlement meaningful for homeowners across the country.   Again, thank you for contributing to this process.

Thank you,

Office of Mortgage Settlement Oversight

*Office of*
**Mortgage Settlement**
Oversight

301 Fayetteville St , Suite 1801
Raleigh, NC 27601

**T** 919.825.4748
**F** 919 825.4650

**mortgageoversight.com**

January 18, 2013

Nicqueshia T. Bey
1334 White Tail Ridge
Cedar Hill, TX 75140

Re: Bank of America

Dear Nicqueshia:

Thank you for your correspondence dated January 14, 2013. We appreciate your taking the time to contact the Monitor's office.

The National Mortgage Settlement (NMS) created the Monitor to ensure that the servicers comply with its terms, not to intervene in individual customer disputes with servicers. Therefore, the Monitor cannot mediate your complaint with the servicer on your behalf. That said, the information you provided is important to the process of enforcing the NMS. It will enable Mr. Smith to see firsthand how servicers are treating their customers. With your information, as well as the information of others, Mr. Smith can determine whether there are patterns or practices of violations of the agreement.

Knowing of systemic violations will enable him to use the tools of the NMS to put a stop to them, which will help make the settlement meaningful for homeowners across the country. Again, thank you for contributing to this process.

Thank you,

Office of Mortgage Settlement Oversight

301 Fayetteville St., Suite 1801
Raleigh, NC 27601

**T** 919 825 4748
**F** 919.825.4650

**mortgageoversight.com**

January 23, 2013

Emet El Washington Bey
4306 Lauren Lane
Garland, TX 75043

RE: Countrywide Home Loans

Dear Mr. Bey:

Thank you for your correspondence dated January 15, 2013. We appreciate your taking the time to contact the Monitor's office.

The National Mortgage Settlement (NMS) created the Monitor to ensure that the servicers comply with its terms, not to intervene in individual customer disputes with servicers. Therefore, the Monitor cannot mediate your complaint with the servicer on your behalf. That said, the information you provided is important to the process of enforcing the NMS. It will enable Mr. Smith to see firsthand how servicers are treating their customers. With your information, as well as the information of others, Mr. Smith can determine whether there are patterns or practices of violations of the agreement.

Knowing of systemic violations will enable him to use the tools of the NMS to put a stop to them, which will help make the settlement meaningful for homeowners across the country. Again, thank you for contributing to this process.

Thank you,

Christine

Office of Mortgage Settlement Oversight

District of Columbia. An enforcement action under this Consent Judgment may be brought by any Party to this Consent Judgment or the Monitoring Committee. Monitor Report(s) and Quarterly Report(s) shall not be admissible into evidence by a Party to this Consent Judgment except in an action in the Court to enforce this Consent Judgment. In addition, unless immediate action is necessary in order to prevent irreparable and immediate harm, prior to commencing any enforcement action, a Party must provide notice to the Monitoring Committee of its intent to bring an action to enforce this Consent Judgment. The members of the Monitoring Committee shall have no more than 21 days to determine whether to bring an enforcement action. If the members of the Monitoring Committee decline to bring an enforcement action, the Party must wait 21 additional days after such a determination by the members of the Monitoring Committee before commencing an enforcement action.

3. **Enforcement Action.** In the event of an action to enforce the obligations of Servicer and to seek remedies for an uncured Potential Violation for which Servicer's time to cure has expired, the sole relief available in such an action will be:

    (a)   Equitable Relief. An order directing non-monetary equitable relief, including injunctive relief, directing specific performance under the terms of this Consent Judgment, or other non-monetary corrective action.

    (b)   Civil Penalties. The Court may award as civil penalties an amount not more than $1 million per uncured Potential Violation; or, in the event of a second uncured Potential Violation of Metrics 1.a, 1.b, or 2.a (*i.e.*, a Servicer fails the specific Metric in a Quarter, then fails to cure that Potential Violation, and then in subsequent Quarters, fails the same Metric again in a Quarter and fails to cure that Potential Violation again in a subsequent Quarter), where the final uncured Potential Violation involves widespread noncompliance with that Metric, the Court may award as civil penalties an amount not more than $5 million for the second uncured Potential Violation.

Nothing in this Section shall limit the availability of remedial compensation to harmed borrowers as provided in Section E.5.

    (c)   Any penalty or payment owed by Servicer pursuant to the Consent Judgment shall be paid to the clerk of the Court or as otherwise agreed by the Monitor and the Servicer and distributed by the Monitor as follows:

# EXHIBIT "C"

an individual for a wrongful foreclosure pursuant to the terms of Exhibit H shall be reduced by the amount of any payment from the Borrower Payment Amount.

## VII.   OTHER TERMS

12.     The United States and any State Party may withdraw from the Consent Judgment and declare it null and void with respect to that party if the Defendant does not make the Consumer Relief Payments (as that term is defined in Exhibit F (Federal Release)) required under this Consent Judgment and fails to cure such non-payment within thirty days of written notice by the party.

13.     This Court retains jurisdiction for the duration of this Consent Judgment to enforce its terms. The parties may jointly seek to modify the terms of this Consent Judgment, subject to the approval of this Court. This Consent Judgment may be modified only by order of this Court.

14.     The Effective Date of this Consent Judgment shall be the date on which the Consent Judgment has been entered by the Court and has become final and non-appealable. An order entering the Consent Judgment shall be deemed final and non-appealable for this purpose if there is no party with a right to appeal the order on the day it is entered.

15.     This Consent Judgment shall remain in full force and effect for three and one-half years from the date it is entered ("the Term"), at which time the Defendants' obligations under the Consent Judgment shall expire, except that, pursuant to Exhibit E, Defendants shall submit a final Quarterly Report for the last quarter or portion thereof falling within the Term and cooperate with the Monitor's review of said report, which shall be concluded no later than six months after the end of the Term. Defendant shall have no further obligations under this Consent Judgment six months after the expiration of the Term, but the Court shall retain

6

# EXHIBIT "B"

Morris Coe- Bey
4347 S. Hampton RDf STE 130
Dallas, Texas 75232
March 25, 2013


Re: CV NO. 1:12-CV-00361-RMC

PLEASE SEND ALL CORRORSPONDANCE TO:

MORRIS COE- BEY
C/O MORRIS COE-BEY
4347 S. HAMPTON RD STE 130
DALLAS, TX 75232-1067

IF ANY QUESTIONS PLEASE CALL 972-274-9498