UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**UNITED STATES**, *et al.*,        )
                                    )
            **Plaintiffs**,         )
                                    )
      v.                            )   Civil Action No. 12-361 (RMC)
                                    )
**BANK OF AMERICA**, *et al.*,      )
                                    )
            **Defendants**.         )
_____ )

**OPINION REGARDING MOTION TO INTERVENE**

Alleging misconduct in home mortgage practices, the United States and numerous State attorneys general sued major mortgagees including Citigroup, Inc.; Citibank, N.A.; and CitiMortgage, Inc. (collectively, Citi). All parties agreed to a settlement, resulting in multiple consent judgments. Raymond Wray, acting under the Servicemembers Civil Relief Act (SCRA), 50 U.S.C. app. §§ 501, *et seq.*, seeks to intervene to set aside or amend the Consent Judgment with Citi to remove a release provision relating to interest rate relief. As explained below, the motion to intervene will be denied.

**I.  FACTS**

On March 12, 2012, the Department of Justice, forty-nine State attorneys general,[1] and the attorney general for the District of Columbia filed this case alleging that Citi and other banks[2] engaged in misconduct in making Federal Housing Administration (FHA) insured mortgage loans. *See* Compl. [Dkt. 1].

---

[1] The State of Oklahoma did not participate.

[2] The banks that are Defendants here are: Bank of America Corporation; Bank of America, N.A.; BAC Home Loans Servicing, LP; Countrywide Home Loans, Inc.; Countrywide Financial Corporation; Countrywide Mortgage Ventures, LLC; Countrywide Bank, FSB; Citigroup, Inc.;

FHA provides mortgage insurance on loans made by approved lenders throughout the United States, including mortgages on single family housing. *Id.* ¶ 15. FHA mortgage insurance provides lenders with protection against losses if mortgagors default. *Id.* ¶ 16. FHA approved lenders, known as Direct Endorsement Lenders, are required to ensure that loans meet strict underwriting criteria in order to be eligible for insurance, including income verification, credit analysis, and property appraisal. *Id.* ¶¶ 17, 69. The United States and State attorneys general complained that certain of the banks' activities that related to loan servicing, origination, and certification violated a host of laws. The Complaint set forth the following eight Counts:

> Count I – unfair and deceptive consumer practices with respect to loan servicing;
>
> Count II – unfair and deceptive consumer practices with respect to foreclosure processing;
>
> Count III – unfair and deceptive consumer practices with respect to origination;
>
> Count IV – violation of the False Claims Act (or FCA), 31 U.S.C. §§ 3729(a)(1)(A)-(C) & (G) and 31 U.S.C. §§ 3729(a)(1)-(3) & (7);
>
> Count V – violation of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA), 12 U.S.C. § 1833a;
>
> Count VI – violation of the SCRA;
>
> Count VII – declaratory judgment under 28 U.S.C. §§ 2201, 2202; and
>
> Count VIII – abuse of the bankruptcy process under common law.

Compl. ¶¶ 102–137.

---

Citibank, N.A.; CitiMortgage, Inc.; J.P. Morgan Chase & Company; JPMorgan Chase Bank, N.A.; Residential Capital, LLC; Ally Financial, Inc.; GMAC Mortgage, LLC; GMAC Residential Funding Co., LLC; Wells Fargo & Company; Wells Fargo Bank N.A.

On April 4, 2012, all parties agreed to a settlement and entered into five separate consent judgments, together valued at $25 billion. *See* Consent Js. [Dkt. 10-14]. By the terms of the Citi Consent Judgment, Citi agreed to pay over $2 billion, without admitting fault, in exchange for release of certain liabilities. *See* Citi Consent J. [Dkt. 12]. With regard to the SCRA, the Citi Consent Judgment releases the United States' potential civil claims under SCRA "arising prior to the date of this agreement against [Citi] with respect to the servicing of residential mortgages, under the provisions of the SCRA related to (a) mortgage foreclosure and (b) the prohibition against charging more than 6% interest on SCRA-covered mortgaged debt after a valid request by a servicemember to lower the interest rate and receipt of orders." *Id*., Ex. H preamble. The Consent Judgment provides for an interest rate review for individuals who "submitted a request either orally or in writing for protection under Section 527 of the SCRA, from January 1, 2008 – present [*i.e*., the date of enter of the Consent Judgment, April 4, 2012]." *Id*., Ex. H(II)(b). The Consent Judgment provides for the following process: through an audit, the Government will identify servicemembers who did not receive their SCRA reduced interest rates; Citi will send each identified person a letter and a release; upon receipt, the servicemember may elect to sign the release in exchange for the payment negotiated for him under the terms of the Consent Judgment. *Id.*, Ex. H(II)(b).

Mr. Wray filed a complaint in federal court in South Carolina against CitiMortgage, alleging violation of § 527, the SCRA interest rate provision. *Wray v. CitiMortgage, Inc*., Civ. No. 3:12-cv-3628-DMC (D.S.C. 2012), Compl. filed Dec. 21, 2012) (S.C. Compl.) (attached as Ex. A to Wray Mot. to Intervene [Dkt. 126]). The South Carolina Complaint alleges that (1) Mr. Wray sought SCRA protection from Citi prior to November 2002; (2) starting in November 2002, Citi issued an "interest subsidy" each month in an amount

intended to equal the excess interest rate owed on Wray's account; (3) Citi did not re-amortize the mortgage at an interest rate of six percent as required by SCRA.  S.C. Compl. ¶¶ 13-14.  In the South Carolina Complaint, Mr. Wray seeks to represent a class of persons "entitled to SCRA relief possessing a mortgage, trust deed, or other security in the nature of a mortgage with CitiMortgage, Inc. from November 1, 2002 to the present whose mortgage, trust deed, or other security bore interest in excess of six percent."  *Id.* ¶ 17.

For the benefit of his putative class action litigation, Mr. Wray filed a motion to intervene in the present case on December 24, 2013.  Mot. to Intervene [Dkt. 126].  The motion to intervene seeks a temporary restraining order, preliminary injunction, and ultimately final judgment setting aside or amending the interest rate portion of the Citi Consent Judgment.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 24(a)(1) provides that a court must permit intervention where the applicant (1) makes a timely motion and (2) the person has an unconditional right to intervene via a federal statute.  The SCRA provides for such a right: "upon timely application, a person aggrieved by a violation of this Act with respect to which the civil action is commenced may intervene in such action."  50 U.S.C. app. § 597(c).  A district court has discretion to determine whether a motion to intervene was timely, *see Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 732 (D.C. Cir. 2003), weighing the amount of time elapsed, the purpose of, and need for, intervention, and the prejudice to those already parties in the case, *see United States v. AT&T*, 642 F.2d 1285, 1295 (D.C. Cir. 1980).  To determine whether a motion was timely, courts look to the date that the party seeking to intervene "knew or should have known that any of [his] rights would be directly affected" by the litigation.  *Nat'l Wildlife Fed'n v.*

*Burford*, 878 F.2d 422, 434 (D.C. Cir. 1989), *rev'd on other grounds sub nom. Mountain States Legal Found. v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990).

### III.  ANALYSIS

Mr. Wray is not an "aggrieved person" who has a right to intervene under SCRA § 597(c).  The Citi Consent Judgment expressly limits the scope of the interest rate review to individuals who requested protection under SCRA § 527 from January 2, 2008 to April 4, 2012.  Citi Consent J., Ex. H(II)(b).  The South Carolina Complaint asserts a request for SCRA protection prior to November 2002, more than five years before the Consent Judgment review period.

Further, Mr. Wray's motion to intervene is untimely.  It was filed twenty-two months after nationwide media coverage of the settlement began and twenty months after the Court entered the Citi Consent Judgment.  Beginning in February 2012, the consent judgments in this case were publicized in national and local newspapers, including media directed especially to the military.  *See, e.g.*, Nelson D. Schwartz & Julie Creswell, *Mortgage Plan Gives Billions to Homeowners, but With Exceptions*, The New York Times, Feb. 10, 2012 at B1 (Ex. 6);[3] John H. Cushman, Jr., *Mortgage Relief for Service Members*, The New York Times, Feb. 12, 2012, http://atwar.blogs.nytimes.com/2012/02/12/mortgage-relief-for-service-members/ ?_php=true&_type=blogs&_r=1 (Ex. 7); *Hefty Payments Will Reach Military Foreclosure Victims*, Sun Herald (Biloxi, MS), Apr. 22, 2012, available at 2012 WLNR 8450828 (Ex. 9); Patricia Kline, *Millions Owed to Families in Foreclosure Deal*, Army Times, Feb. 10, 2012, http://www.armytimes.com/apps/pbcs.dll/article?AID=2012202100301 (Ex. 11); Leo Shane III, *Mortgage Settlement Includes Cash, Help for Troops, Stars and Stripes*, Feb. 16, 2012 (Ex. 12).

---

[3] The publications are part of the record, attached as Exhibits to Citi's Opposition [Dkt 135]; each citation references the Exhibit by number.

The consent judgments were also reported via the Department of Justice website. *See* U.S. Dep't of Justice, *$25 Billion Mortgage Servicing Agreement Filed in Federal Court*, Mar. 12, 2012, http://www.justice.gov/opa/pr/2012/March/12-asg-306.html (Ex. 15). The consent judgments were announced and the full text was made available through PACER as well as through the website especially set up for this settlement. *See* Nat'l Mortgage Settlement, http://www.nationalmortgagesettlement.com (last visited Mar. 18, 2014). The National Mortgage Settlement website includes contact information for the Attorney General's Offices for the States that participated in the settlement. Due to the substantial and widespread publicity that the consent judgments in this case received starting in February 2012, Mr. Wray had actual or constructive notice of the Citi Consent Judgment twenty-two months before filing his motion to intervene in December 2013.

Plaintiff's counsel, Richard Harpootlian, also had actual or constructive knowledge about the Citi Consent Judgment as early as April 2012 because the Consent Judgment partially settled a lawsuit in which counsel represented a whistleblower (Lynn Szymoniak). The Citi Consent Judgment provided:

> The Federal Payment Settlement Amount includes resolution of the following qui tam actions: . . . . (iii) $95,000,000 from those claims in *United States ex rel. Szymoniak v. [SEALED]*, Civ. No. 0:10-cv-01465 (D.S.C.) and in *United States ex rel. Szymoniak v. [SEALED]*, Civ. No. 3:10-cv-575 (W.D.S.C.) that are expressly released by the United States in this litigation.

*See* Citi Consent J., Ex. B ¶ 1. Even though the whistleblower lawsuits did not deal with SCRA, Mr. Harpootlian received either actual or constructive notice of the Citi Consent Judgment in April 2012. Such notice gave rise to a duty to investigate the details of the Citi Consent Judgment for the purpose of Mr. Wray's lawsuit. The motion to intervene in this case was not

filed until December 2013, after the Citi Consent Judgment had been in effect for over twenty months. This long delay renders the motion to intervene untimely.

In addition, the motion to intervene is untimely because it would interfere with a large and complex settlement, a settlement that had been in effect for twenty months before Mr. Wray filed his motion. A district court acts within the bounds of its discretion when it chooses to deny intervention to avoid the risk of undoing a hard-won settlement. *Moten v. Bricklayers, Masons & Plasterers Int'l Union of Am.*, 543 F.2d 224, 228 (D.C. Cir. 1976) (affirming the district court's denial of motion to intervene as untimely where the motion was filed on the eve of settlement).

Because Mr. Wray is not an "aggrieved person" under SCRA, the motion to intervene is untimely, and intervention would be prejudicial to a hard-won settlement, the motion will be denied.[4]

## IV.  CONCLUSION

For the foregoing reasons, Raymond Wray's motion to intervene [Dkt. 126] will be denied. Further, Mr. Wray's motion for a temporary restraining order and preliminary injunction, filed as part of the motion to intervene, will be denied as moot. A memorializing Order accompanies this Opinion.

Date:  March 18, 2014

/s/
ROSEMARY M. COLLYER
United States District Judge

---

[4] As an alternative to intervention as of right, a court may allow permissive intervention—where the applicant (1) makes a timely motion; (2) has a claim or defense; and (3) that claim or defense shares with the main action a common question of law or fact. Fed. R. Civ. P. 24(b); *see also EEOC v. Nat'l Children's Ctr.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). Because Mr. Wray's motion is untimely and intervention would be prejudicial, the Court will not grant permissive intervention.