**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *et. al.*,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA CORP., *et. al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 12-00361 (RMC)

MONITOR'S FINAL CONSUMER RELIEF REPORT REGARDING DEFENDANT WELLS FARGO & COMPANY'S COMPLIANCE WITH ITS AGREEMENT WITH THE ATTORNEY GENERAL OF THE STATE OF FLORIDA

The undersigned, Joseph A. Smith, Jr., in my capacity as Monitor under the Consent Judgment (Case 1:12-cv-00361-RMC; Document 14) filed in the above-captioned matter on April 4, 2012 ("Judgment") and as Monitor pursuant to the February 9, 2012 agreement between the Attorney General of the State of Florida ("Attorney General") and Bank of America Corporation, J.P. Morgan Chase & Co. and Wells Fargo & Company ("Florida Agreement"), respectfully files with the United States District Court for the District of Columbia ("Court") this Final Florida Consumer Relief Report ("Report") regarding the satisfaction by Wells Fargo & Company, as of February 28, 2013, of its Consumer Relief Requirements under the Florida Agreement, as such obligations are set forth with more particularity in Exhibit A to the Florida Agreement and Exhibits D and D-1 to the Judgment. This Report is filed pursuant to Exhibit A to the Florida Agreement. The Florida Agreement is Exhibit C to the Notice of Submission of Additional Settlement Agreements filed with the Court on March 13, 2012 (Case 1:12-cv-00361-RMC; Document 2).

## I.     Definitions

This section defines words or terms that are used throughout this Report. Words and terms used and defined elsewhere in this Report will have the meanings given to them in the Sections of this Report where defined. Any capitalized terms used and not defined in this Report will have the meanings given them in the Florida Agreement, the Judgment or the Exhibits attached thereto, as applicable.  For convenience, a copy of the Florida Agreement, without the signature pages of the Parties and including only Exhibit A, is attached to this Report as Attachment 1; and the Judgment, without the signature pages of the Parties and including only Exhibits D and D-1, is attached to this Report as Attachment 2.

In this Report:

i)      *Actual Credit Amount* has the meaning given the term in Section III.E.2. of this Report;

ii)     *Attorney General* means the Attorney General of the State of Florida;

iii)    *Consumer Relief* has the meaning given to the term in Section II.A. of this Report and consists of any principal reduction on first or second liens (including reductions through loan modifications, deeds-in-lieu or short sales), deficiency waivers and a refinancing program in relation to mortgage loans secured by residential properties located in Florida, only to the extent that such activity would qualify for credit under Exhibits D and D-1 to the Judgment;

iv)     *Consumer Relief Report* means Servicer's formal, written assertion as to the amount of Consumer Relief credit earned, which report is given to the IRG and is the basis on which the IRG performs a Satisfaction Review;

v)    *Consumer Relief Requirements* means Servicer's obligations in reference to Consumer Relief as set forth in the Florida Agreement, including Exhibit A to the Florida Agreement and Exhibits D and D-1 to the Judgment, unless the term is used in connection with the Judgment, then *Consumer Relief Requirements* means and is limited to Servicer's obligations in reference to providing relief to consumers in the amounts and consisting of the transaction types set out in Exhibits D and D-1 to the Judgment;

vi)    *Court* means the United States District Court for the District of Columbia;

vii)    *Exhibit A* means Exhibit A to the Florida Agreement;

viii)    *Exhibit D* means Exhibit D to the Judgment;

ix)    *Exhibit D-1* means Exhibit D-1 to the Judgment;

x)    *Exhibit E* means Exhibit E to the Judgment;

xi)    *Final National Consumer Relief Report* means the Final Consumer Relief Report I filed with the Court on March 18, 2014, pursuant to the Judgment, regarding Servicer's creditable consumer relief activities under the Judgment from April 1, 2013 through June 30, 2013 and its satisfaction of its Consumer Relief Requirements under the Judgment;

xii)    *First Interim National Consumer Relief Report* means the Interim Consumer Relief Report I filed with the Court on October 16, 2013, pursuant to the Judgment, regarding Servicer's creditable consumer relief  activities under the Judgment through December 31, 2012;

xiii)    *First Testing Period* is the period from March 1, 2012, through December 31, 2012;

xiv)    *Florida Agreement Testing Period* will have the meaning given to the term in Section II.E. of this Report and is the period from March 1, 2012, through February 28, 2013;

xv)     *Internal Review Group* or *IRG* means an internal quality control group established by Servicer that is independent from Servicer's mortgage servicing operations, as required by paragraph C.7 of Exhibit E;

xvi)    *IRG Assertion* or *Assertion* refers to a certification given to me by the IRG regarding the credit amounts reported in Servicer's Consumer Relief Report;

xvii)   *Monitor* means and is a reference to the person appointed under the Florida Agreement and the Judgment to oversee, among other obligations, Servicer's satisfaction of the Consumer Relief Requirements, and the Monitor is Joseph A. Smith, Jr., who will be referred to in this Report in the first person;

xviii)  *Monitor Report* or *Report* means this report;

xix)    *Participating Servicer* means one of the Servicers that is a party to the Judgment other than Wells Fargo & Company and Wells Fargo Bank, N.A.;

xx)     *Primary Professional Firm* or *PPF* means BDO Consulting, a division of BDO USA, LLP;

xxi)    *Professionals* means the Primary Professional Firm and any other accountants, consultants, attorneys and other professional persons, together with their respective firms, I engage from time to time to represent or assist me in carrying out my duties under the Judgment and the Florida Agreement;

xxii)   *Reported Credit Amount* has the meaning given to the term in Section III.E.2. of this Report;

xxiii)  *Satisfaction Review* means a review conducted by the IRG to determine Servicer's satisfaction of the Consumer Relief Requirements under the Florida Agreement;

xxiv)   *Second Testing Period* is the period from January 1, 2013, through March 31, 2013;

xxv)   *Second Interim National Consumer Relief Report* means the Interim Consumer Relief Report I filed with the Court on January 23, 2014, pursuant to the Judgment, regarding Servicer's creditable consumer relief activities under the Judgment from January 1, 2013, through March 31, 2013;

xxvi)   *Servicer* for the purpose of this Report means Wells Fargo & Company when referring to or used in context with the Florida Agreement and Wells Fargo & Company and Wells Fargo Bank, N.A. when referring to or used in context with the Judgment or consumer relief thereunder, unless its usage indicates or requires otherwise, and *Servicers* for the purpose of the Settlement and this Report means the following: (i) J.P. Morgan Chase Bank, N.A.; (ii) Ocwen Loan Servicing, LLC and Green Tree Servicing LLC, successors by assignment to Residential Capital, LLC and GMAC Mortgage, LLC; (iii) Bank of America, N.A; (iv) CitiMortgage, Inc.; and (v) Wells Fargo & Company and Wells Fargo Bank, N.A;

xxvii)   *Settlement* means the Judgment and four other consent judgments filed with the Court in Case 1:12-cv-00361-RMC that settled mortgage loan servicing claims of the type described in the Judgment;

xxviii)   *System of Record* or *SOR* means Servicer's business records pertaining primarily to its mortgage servicing operations and related business operations;

xxix)   *Testing Population* has the meaning given to the term in Section III.E.1. of this Report;

xxx)   *Third Testing Period* is the period from April 1, 2013, through June 30, 2013;

xxxi)  *Work Papers* means the documentation of the test work and assessments by the IRG with regard to Servicer's satisfaction of the Consumer Relief Requirements, which documentation is required to be sufficient for the PPF to substantiate and confirm the accuracy and validity of the work and conclusions of the IRG; and

xxxii)  *Work Plan* means the work plan established by agreement between Servicer and me pursuant to paragraphs C.11 through C.15 of Exhibit E.

## II.    Introduction

### A.    *Forms of Consumer Relief*

Under the terms of the Florida Agreement, Servicer is required to provide mortgage loan relief in the form of principal reductions on first or second liens, through loans modifications, short sales and deeds-in-lieu of foreclosure, as well as deficiency waivers, to certain distressed borrowers and a refinancing program to current borrowers who would not otherwise qualify for a refinance. To qualify for credit, the mortgage loan relief is required to satisfy the eligibility requirements of one of the following forms of consumer relief set out in Exhibits D and D-1("Consumer Relief"):

- First Lien Mortgage Modifications[1]
- Second Lien Portfolio Modifications[2]
- Other Credits
  - Short Sales and Deeds-in Lieu[3]

---

[1]  Exhibit D, ¶ 1; Exhibit D-1, ¶ 1. Creditable First Lien Mortgage Modifications include: Standard Principal Reduction Modifications (Exhibit D-1, ¶ 1.i); Forbearance Conversions (Exhibit D-1, ¶ 1.ii); Conditional Forgiveness Modifications (Exhibit D, ¶ 1.i); 180 DPD Modifications (Exhibit D, ¶ 1.f); FHA Principal Reductions (Exhibit D, ¶ 1.j(i)); and Government Modifications (Exhibit D, ¶1.j (ii)).

[2]  Exhibit D, ¶ 2; Exhibit D-1, ¶ 2. Creditable Second Lien Portfolio Modifications include proprietary (non-MHA) second lien principal reductions, also known as "2.b Modifications" (Exhibit D, ¶ 2.b); second lien principal reductions based upon a completed non-HAMP first lien modification by a Participating Servicer in the Settlement, also known as "2.c Modifications" (Exhibit D, ¶ 2.c); second lien modifications conducted through the Making Home Affordable Program (including 2MP), the FHA Short Refinance Second Lien Program (FHA2LP) or the HFA Hardest Hit Fund (or any other appropriate governmental program), also known as "2.d Modifications" or "second lien government modifications" (Exhibit D, ¶ 2.d); and second lien extinguishments to support the future ability of individuals to become homeowners, also known as "2.e Extinguishments" (Exhibit D, ¶ 2.e).

- Deficiency Waivers[4]

- Refinancing Program[5]

As described in the Final National Consumer Relief Report, after my PPF and I conducted confirmatory due diligence, I concluded that Servicer had satisfied its Consumer Relief Requirements under the Judgment.  This Report addresses Servicer's satisfaction of its obligation to provide Consumer Relief to Florida borrowers under the Florida Agreement.

### B.    Consumer Relief – Eligibility Criteria and Earned Credits

As reflected in Exhibits D and D-1, each of the forms of Consumer Relief has unique eligibility criteria and modification requirements. In order for Servicer to receive credit with respect to Consumer Relief activities on any mortgage loan, these eligibility criteria and modification requirements must be satisfied with respect to such mortgage loan and such satisfaction has to be validated by me in accordance with Exhibits D and D-1 and the Florida Agreement.   For each dollar of creditable principal reduction that Servicer provides through an eligible First Lien Mortgage Modification, Second Lien Portfolio Modification, Short Sale, Deed-in-Lieu or Deficiency Waiver, Servicer will receive one dollar in credit.  The credit amount for a refinanced loan is calculated by multiplying the difference between the pre-modification and post-modification interest rates by the unpaid principal balance and then multiplying the resulting product by 30.

---

[3]    Exhibit D, ¶ 4; Exhibit D-1, ¶ 4.  Creditable loss mitigation transaction types in the context of Short Sales and Deeds-in-Lieu include payments made to an unrelated second lien holder for release of a second lien in connection with a completed Short Sale or Deed-in-Lieu (Exhibit D-1, ¶ 4.i.); acceptance of a short sale, forgiveness of a deficiency and release of lien on a first lien loan or second lien loan (including extinguishment of an owned second lien) in connection with a successful short sale or deed-in-lieu (Exhibit D, ¶ 4.b and c; Exhibit D-1, ¶ 4.ii, iii and iv); and extinguishment of an owned second lien to facilitate a short sale or deed-in-lieu successfully conducted by a Participating Servicer (Exhibit D, ¶ 4.d; Exhibit D-1, ¶ 4.iv).
[4]    Exhibit D, ¶ 5; Exhibit D-1, ¶ 5.  Servicer did not claim credit for deficiency waivers in Florida.
[5]    Exhibit D, ¶ 9.

Under the Florida Agreement, Servicer may receive additional 25% credit against its Consumer Relief Requirements for amounts credited pursuant to its refinancing program and for principal reduction in the form of First Lien Mortgage Modifications and for Deficiency Waivers completed on or after March 1, 2012 and implemented on or before February 28, 2013.[6] In contrast to the foregoing incentive for promptness, Servicer will incur a penalty of 50% of its unmet Consumer Relief Requirements, subject to a maximum amount of $70 million, if it does not meet all of its Consumer Relief Requirements within three years of March 1, 2012. That penalty will increase to 65% of its unmet Consumer Relief Requirements, subject to a maximum payment of $70 million, in cases in which Servicer also has failed to complete 75% of its total Consumer Relief Requirements within two years of March 1, 2012. If Servicer fails to meet its Consumer Relief Requirements under both the Florida Agreement and the Judgment, it will pay to the State of Florida an amount equal to the greater of (a) the amount owed to the Attorney General under the Florida Agreement; or (b) the amount owed to the State of Florida under paragraph 10(d) of Exhibit D.[7]

With respect to the requirements applicable to the forms of Consumer Relief and the transaction types within each form, on an aggregate basis, at least 85% of credit that Servicer earns as a result of First Lien Mortgage Modifications must be in relation to mortgage loans that have an unpaid principal balance before capitalization at or below the highest GSE conforming loan limit caps as of January 1, 2010.[8]

---

[6]    Exhibit A.
[7]    Exhibit A.    Servicer satisfied its Consumer Relief Requirements under both the Florida Agreement and the Judgment within time periods that avoid the imposition of any of the penalties set out in Exhibit A or Exhibit D, ¶¶ 10.c, d.
[8]    Exhibit A.

Finally, with respect to the requirements applicable to the forms of Consumer Relief on the basis of transaction types, there are differences in eligibility for transaction types within each of the forms of Consumer Relief; there are also differences in eligibility requirements among the various forms of Consumer Relief. These differences were explained in detail in Section II.B.4 of the First Interim National Consumer Relief Report.

C.       *Consumer Relief – Servicer's Obligations*

Under the terms of the Florida Agreement, Servicer is obligated to provide $1,200,000,000 in credited Consumer Relief on residential properties in the State of Florida.

D.       *Consumer Relief – Monitor's Obligations*

The Florida Agreement requires that I determine whether Servicer has satisfied the Consumer Relief Requirements in accordance with the authorities provided in the Florida Agreement and, by reference, the Judgment.

E.       *Consumer Relief – Servicer's Request*

On November 14, 2013, after completing a Satisfaction Review, the IRG submitted to me an IRG Assertion concerning the amount of Consumer Relief credit that Servicer had claimed to have earned in relation to loans secured by residential properties located in Florida from March 1, 2012, through February 28, 2013 ("Florida Agreement Testing Period"). Servicer has requested that, in addition to reporting on the IRG Assertion, I review its crediting activity for the Florida Agreement Testing Period, validate that the amount of credit claimed in the IRG Assertion is accurate and in accordance with Exhibit A to the Florida Agreement and Exhibits D and D-1 to the Judgment, and certify that it has fully satisfied its Consumer Relief Requirements under the Florida Agreement.

### III.    Review – Certification of Full Satisfaction

#### A.    Overview

The process utilized for validating Servicer's satisfaction of its Consumer Relief Requirements under the Florida Agreement followed the same process that the IRG and I, assisted by my PPF, utilized to validate Servicer's satisfaction of its Consumer Relief Requirements under the Judgment.  In following that process, the IRG performed a Satisfaction Review after Servicer asserted that it had satisfied its Consumer Relief Requirements.[9]  Once it completed a Satisfaction Review, the IRG reported the results of that work to me through an IRG Assertion. When I received the IRG Assertion, with my Primary Professional Firm, I undertook necessary confirmatory due diligence and validation of Servicer's claimed Consumer Relief credits as reflected in the IRG Assertion. As noted above in Section II.E, this Report pertains to my findings regarding an IRG Assertion covering the Florida Agreement Testing Period. Also, as noted above, at Servicer's request, this Report includes my determination regarding Servicer's satisfaction of its Consumer Relief Requirements under the Florida Agreement.

#### B.    Consumer Relief Satisfaction Review Process

In order to better accomplish the processes outlined in Section III.A above, Servicer and I agreed upon a Work Plan and Sampling Framework that, among other things, set out the testing methods, procedures and methodologies that are to be used relative to confirmatory due diligence and validation of Servicer's claimed Consumer Relief under the Florida Agreement, including Exhibit A to the Florida Agreement and Exhibits D and D-1 to the Judgment . As contemplated in, and in furtherance of, the Work Plan and Sampling Framework, Servicer and I also agreed upon Testing Definition Templates that outline the testing methods and process flows to be utilized to

---

[9]    Exhibit E, ¶ C.7.

assess whether, and the extent to which, the credits Servicer would be claiming for its Consumer Relief activities were earned credits, that is, credits that could be applied toward satisfaction of Servicer's Consumer Relief Requirements under the Florida Agreement. The testing methods and process flows are described in detail in Section III.B. of the First Interim National Consumer Relief Report, and as set out in that Section, they entail the examination and testing by each of the IRG and the PPF of creditable activities, together with calculations based on the results of those examinations. In addition, it includes both in-person and web-based meetings by the PPF with the IRG and the PPF's unfettered access to the IRG and the IRG's Work Papers during the PPF's confirmatory due diligence and validation of Servicer's assertions relative to its Consumer Relief activities.

### C.      Servicer's Assertions

In Servicer's Consumer Relief Report submitted to the IRG, Servicer claimed that, for the Florida Agreement Testing Period, it was entitled to claim credit in the amount of $1,424,087,479 pursuant to Exhibit A to the Florida Agreement and Exhibits D and D-1 to the Judgment.  All of Servicer's claimed $1,424,087,479 credit was a result of relief afforded to borrowers on loans in Servicer's mortgage loan portfolio that are held for investment. Approximately 16% of Servicer's claimed credit was through First Lien Mortgage Modifications and approximately 54% was through Refinancing relief. Short-sales and other types of Consumer Relief, excluding Second Lien Portfolio Modifications, made up approximately 22% of Servicer's claimed credit. Second Lien Portfolio Modifications made up 8% of Servicer's claimed credit. A breakdown of the Consumer Relief credit, by type of relief, claimed by Servicer for the Florida Agreement Testing Period is set forth in Table 1, below:

*Table 1*

| Type of Relief | Loan Count | Claimed Credit Amount |
|---|---|---|
| **First Lien Mortgage Modifications** | **2,867** | **$229,464,885** |
|   Principal Forgiveness | 48 | $5,090,678 |
|   Forbearance Conversion | 1,353 | $56,058,804 |
|   Conditional Forgiveness | 58 | $5,148,546 |
|   180 DPD Modifications | 85 | $10,850,108 |
|   Government Modifications | 1,323 | $152,316,749 |
| | | |
| **Second Lien Portfolio Modifications** | **1,559** | **$111,093,647** |
|   2.b Modifications | 33 | $934,418 |
|   2.d Modifications | 105 | $1,033,730 |
|   2.e Modifications | 1,421 | $109,125,499 |
| | | |
| **Refinancing Program** | **4,912** | **$770,481,685** |
| | | |
| **Other Creditable Items** | **3,583** | **$313,047,262** |
| Short Sales/Deeds-in-Lieu | 3,583 | $313,047,262 |
| | | |
| **Total Consumer Relief Programs** | **12,921** | **$1,424,087,479** |

      D.     *Internal Review Group's Satisfaction Review*

After submitting its IRG Assertion on November 14, 2013, the IRG reported to me the results of its Satisfaction Review, which report concluded that:

i)       the Consumer Relief asserted by Servicer for the Florida Agreement Testing Period was based upon completed transactions that were correctly reported by Servicer;

ii)      Servicer had correctly credited such Consumer Relief activities, so that the claimed amount of credit is correct;

iii)     the claimed Consumer Relief correctly reflected the requirements, conditions and limitations, as set forth in Exhibit A to the Florida Agreement and Exhibits D and D-1 to the Judgment; and

iv)      Servicer had fully satisfied its Consumer Relief Requirements as set forth in Exhibit A to the Florida Agreement.

According to the IRG's report to me, its Satisfaction Review was based upon a detailed review of Servicer's relevant records and on statistical sampling to a 99% confidence level.[10] The report of the IRG with regard to its Satisfaction Review was accompanied by the IRG's Work Papers reflecting its review and analysis.

E.      *IRG Testing and Confirmation as to Consumer Relief Credit Earned*

1.      <u>Population Definition/Sampling Approach</u>. The IRG's testing of Servicer's Consumer Relief Report as to the amount of Consumer Relief credit earned first involved the IRG creating four statistically valid samples from all mortgage loans receiving Consumer Relief for which Servicer sought credit under the Florida Agreement. Each of these samples contained loans from one of four separate and distinct categories, each of which was treated as a testing population ("Testing Population"). These Testing Populations were: (i) First Lien Mortgage Modifications,[11] including standard principal reduction modifications, forbearance conversions, conditional forgiveness, 180 DPD modifications and government modifications; (ii) Second Lien Portfolio Modifications,[12] including second lien standard principal reduction modifications, second lien government modifications and second lien principal extinguishments; (iii) Refinancing Program;[13] and (iv) Other Credits, including short sales and deeds-in-lieu.[14] The IRG selected the loans that were included in these samples in two stages:  First, the IRG selected from each Testing Population

---

[10]   Confidence level is a measure of the reliability of the outcome of a sample. A confidence level of 99% in performing a test on a sample means there is a probability of at least 99% that the outcome from the testing of the sample is representative of the outcome that would be obtained if the testing had been performed on the entire population.
[11]   Exhibit D, ¶ 1.
[12]   Exhibit D, ¶ 2.
[13]   Exhibit D, ¶ 9.
[14]   Exhibit D, ¶ 4.

all loans secured by Florida residential properties that had been tested by the IRG as part of a satisfaction review conducted pursuant to the Judgment. Next, the IRG randomly selected a number of additional loans from the remainder of the Testing Population sufficient to ensure that the sample size was statistically valid. The additional loans for each of these Testing Populations were selected utilizing Audit Command Language (ACL), which is a well-established and well-known licensed data extraction and analysis software product. In determining the sample size, the IRG, in accordance with the Work Plan, utilized a 99% confidence level (one-tailed), 2.5% estimated error rate and 2% margin of error approach. The total number of loans in each Testing Population and the number of loans tested by the IRG, which number was equal to the number the Servicer and I had contemplated when developing the Work Plan, are set forth in Table 2, below:

*Table 2*

| Testing Population | Number of Loans in Credit Population | Total Reported Credit Amount | Number of Loans in IRG Sample | Total Reported Credit Amount in IRG Sample |
|---|---|---|---|---|
| **First Lien Mortgage Modifications** | 2,867 | $229,464,885 | 296 | $23,422,889 |
| **Second Lien Portfolio Modifications** | 1,559 | $111,093,647 | 272 | $20,963,813 |
| **Refinancing Program** | 4,912 | $770,481,685 | 309 | $48,821,841 |
| **Other Credits** | 3,583 | $313,047,262 | 302 | $26,309,655 |
| **Total Consumer Relief Programs** | **12,921** | **$1,424,087,479** | **1,179** | **$119,518,198** |

Table 3, below, sets forth, for each sample, by the number of loans and Total Reported Credit Amount, a breakdown of the number of loans that had been tested as part of satisfaction reviews conducted pursuant to the Judgment and those additional loans only tested as part of the Florida Agreement testing:[15]

*Table 3*

| Testing Population | Number of Florida Loans Tested Pursuant to the Judgment | Reported Credit Amount of Loans Tested Pursuant to the Judgment | Number of Loans Tested Pursuant to the Florida Agreement Only | Reported Credit Amount of Loans Tested Pursuant to the Florida Agreement Only |
|---|---|---|---|---|
| First Lien Mortgage Modifications | 85 | $7,539,000 | 211 | $15,883,889 |
| Second Lien Portfolio Modifications | 124 | $10,426,588 | 148 | $10,537,224 |
| Refinancing Program | 122 | $19,005,293 | 187 | $29,816,548 |
| Other Credits | 47 | $3,602,804 | 255 | $22,706,851 |
| **Total Consumer Relief Programs** | **378** | **$40,573,686** | **801** | **$78,944,512** |

2.      <u>Approach to Testing Loans</u>. For each of the loans in the samples drawn from the four Testing Populations, the IRG conducted an independent review to determine whether the loan was eligible for credit and the amount of credit reported by Servicer was calculated correctly. The IRG executed this review pursuant to and in accordance with the Testing Definition Templates and related test plans for each of the four Testing Populations by accessing from Servicer's System of Record the various data inputs required to undertake the eligibility determination and credit calculation for each loan. The IRG's process for testing is set out in Section III.E.2 of the First Interim National Consumer Relief Report.

After verifying the eligibility and recalculating credit for all loans in the sample for each Testing Population, the IRG calculated the sum of the recalculated credits for the sample for each Testing Population ("Actual Credit Amount") and compared that amount against the amount of credit claimed by Servicer for the sample of the respective Testing Population ("Reported Credit

---

15      Throughout this Report, any one dollar differences in totals are the result of rounding.

Amount"). According to the Work Plan, if the Actual Credit Amount equals the Reported Credit Amount or if the Reported Credit Amount is not more than 2.0% greater or less than the Actual Credit Amount for any of the four Testing Populations, the Reported Credit Amount will be deemed correct and Servicer's Consumer Relief Report will be deemed to have passed the Satisfaction Review and will be certified by the IRG to me. If, however, the IRG determined that the Reported Credit Amount for any of the four Testing Populations exceeded the Actual Credit Amount by more than 2.0%, the IRG would inform Servicer, which would then be required to perform an analysis of the data of all loans in the Testing Population from which the sample had been drawn, identify and correct any errors and provide an updated Consumer Relief Report to the IRG. The IRG would then select a new sample and test the applicable Testing Population or Testing Populations against the updated report in accordance with the process set forth above. If the IRG determined that the Actual Credit Amount was greater than the Reported Credit Amount by more than 2.0% for a particular Testing Population, Servicer had the option of either (i) taking credit for the amount it initially reported to the IRG or (ii) correcting any underreporting of Consumer Relief credit and resubmitting the entire population of loans to the IRG for further testing in accordance with the process set forth above.

3.    Results of IRG Testing of Reported Consumer Relief Credit. Utilizing the steps set forth above, the IRG determined that the difference between the Reported Credit Amount and the Actual Credit Amount for each sample of the four Testing Populations was within the 2.0% error threshold described above. These findings by Testing Population are summarized in Table 4, below:

*Table 4*

| Testing Population | Loans Sampled | Servicer Reported Credit Amount | IRG Calculated Actual Credit Amount | Amount Overstated/ (Understated) | % Difference |
|---|---|---|---|---|---|
| **First Lien Mortgage Modifications** | 296 | $23,422,889 | $23,503,501 | ($80,612) | (0.34%) |
| **Second Lien Portfolio Modifications** | 272 | $20,963,813 | $20,904,752 | $59,061 | 0.28% |
| **Refinancing Program** | 309 | $48,821,841 | $48,823,290 | ($1,449) | 0.00% |
| **Other Credits** | 302 | $26,309,655 | $25,924,288 | $385,367 | 1.49% |

Based upon the results set forth above, the IRG certified that the amount of Consumer Relief credit claimed by Servicer in each Testing Population was accurate and conformed to the requirements in Exhibit A to the Florida Agreement and Exhibits D and D-1 to the Judgment. This certification was evidenced in the IRG Assertion attached to this Report as Attachment 3, which assertion is in the form required by the Work Plan.

F.    *Monitor's Review of the IRG's Assertion on Consumer Relief Credit*

1.    Preliminary Review. As discussed in the First Interim National Consumer Relief Report, preliminary to the PPF's review of the IRG's Consumer Relief testing, pursuant to the Judgment, for the First Testing Period, I, along with the PPF and some of my other Professionals, met with representatives of Servicer to gain an understanding of its mortgage banking operations, SOR and IRG program, and the IRG's proposed approach for consumer relief testing, among other things.

In addition, during the Second Testing Period and the Third Testing Period, the PPF continued to interact with the IRG and Servicer to gain additional information and evidence necessary to the PPF performing its confirmatory work.

17

The knowledge gained during the First Testing Period, Second Testing Period and Third Testing Period carried forward into the testing conducted pursuant to the Florida Agreement and was supplemented by the PPF, as necessary or appropriate, through continued interaction with the IRG and Servicer.

2.    Review. At my direction, the PPF conducted an extensive review of the testing conducted by the IRG relative to Consumer Relief crediting for the Florida Agreement. This review of Consumer Relief crediting began in January 2014 and continued, with only minimal interruption, until the filing of this Report. For each of the Testing Populations, the principal focus of the reviews was the PPF's testing of all loans that had not previously been tested by the PPF as part of the testing that the PPF had done pursuant to the Judgment, following the processes and procedures set out in the Testing Definition Templates and the IRG's test plans. These reviews were of the same type as those undertaken by the PPF pursuant to the Judgment, and included access to information of the type substantially identical to that to which it was afforded, in performing its confirmatory work pursuant to the Judgment.  With regard to the loans that the PPF previously tested as part of its confirmatory work pursuant to the Judgment, the PPF confirmed that each of the loans was secured by a property located in Florida; in all other regards, the PPF relied upon the results of its testing of these loans that it conducted pursuant to the Judgment.

3.    Results of the PPF's Testing of Reported Consumer Relief Credit. Throughout its testing process, the PPF interacted extensively with the IRG to resolve issues that arose during the testing process. Most of the issues that arose during the PPF's testing pursuant to the Florida Agreement related to the IRG's need to provide additional or missing evidence relating to certain loan eligibility requirements.  In almost all cases, these issues were resolved by the IRG providing the necessary evidence.[16]

After completing the loan-level testing, the PPF determined that the IRG had correctly validated the Consumer Relief credit amounts reported by Servicer in the four Testing Populations. The results of the PPF's loan-level testing are set forth in Table 5, below:

*Table 5*

| Testing Population | Loans Reviewed by PPF | Servicer Reported Credit Amount | PPF Calculated Actual Credit Amount | Amount Overstated/ (Understated) | % Difference |
|---|---|---|---|---|---|
| First Lien Mortgage Modifications | 296 | $23,422,889 | $23,516,310 | ($93,421) | (0.40%) |
| Second Lien Portfolio Modifications | 272 | $20,963,813 | $20,904,752 | $59,061 | 0.28% |
| Refinancing Program | 309 | $48,821,841 | $48,833,630 | ($11,789) | (0.02%) |
| Other Credits | 302 | $26,309,655 | $25,927,288 | $382,367 | 1.47% |

For each of the samples tested, the difference between the Reported Credit Amount and the credit amount as calculated by the PPF was within the margin of error in the Work Plan.[17] In addition, other than the PPF's finding that there were isolated instances of Servicer and the IRG miscalculating the amount of credit earned, the PPF's credit calculations and the IRG's credit calculations are substantially the same.

The PPF documented its findings in its work papers and has reported them to me. I then undertook an in-depth review of the IRG's Work Papers with the PPF, as well as the PPF's work papers.

---

[16]  In the First Interim National Consumer Relief Report, Second Interim National Consumer Relief Report and Final National Consumer Relief Report, I discussed some of the issues that arose during the PPF's testing pursuant to the Judgment.  *See*, Section III.G.3. of the First Interim National Consumer Relief Report; Section III.F.3. of the Second Interim National Consumer Relief Report; and Section III.F.3. of the Final National Consumer Relief Report.

[17]  *See,* Section III.E.1., above.

Based upon the procedures described above and in the First Interim National Consumer Relief Report, Second Interim National Consumer Relief Report and Final National Consumer Relief Report, from the Start Date through February 28, 2013, Servicer has correctly claimed credit in the amount of $1,424,087,479 pursuant to the Florida Agreement.

4.    GSE-Conforming Loan Requirement for First Lien Mortgage Modifications. Exhibit A requires that at least 85% of credit that Servicer earns as a result of First Lien Mortgage Modifications must be in relation to mortgage loans that have an unpaid principal balance before capitalization at or below the highest GSE conforming loan limit caps as of January 1, 2010.[18] The PPF analyzed the entire population of First Lien Mortgage Modifications for which Servicer has sought credit and determined that $226,713,232, or 98.80%, of the credit was in relation to loans that had an unpaid principal balance before capitalization at or below the highest GSE conforming loan limit caps as of January 1, 2010.

## VII.    Summary and Conclusions

On the basis of the information submitted to me and the work as described in this Report, I find that the amount of Consumer Relief set out in Servicer's Consumer Relief Report for the period extending from March 1, 2012, through February 28, 2013, is correct and accurate within the tolerances permitted under the Work Plan.

Based upon my findings listed above and my findings in the First Interim National Consumer Relief Report, the Second Interim National Consumer Relief Report and the Final National Consumer Relief Report, I conclude that Servicer has substantially complied with the material terms of the Florida Agreement and has satisfied the requirements and obligations of the

---

[18]    Exhibit D, ¶ 1.b. GSE conforming loan limit caps as of January 1, 2010 are: 1 Unit - $729,750; 2 Units - $934,200; 3 Units - $1,129,250; and 4 Units - $1,403,400.

Florida Agreement to provide Consumer Relief under and pursuant to Exhibit A to the Florida Agreement and Exhibits D and D-1 to the Judgment.

Prior to the filing of this Report, I have conferred with the Attorney General and Servicer about my findings, and I have provided each with a copy of my Report. Immediately after filing this Report, I will provide a copy of this Report to the Board of Directors of Wells Fargo & Company, or a committee of the Board designated by Servicer.

I respectfully submit this Report to the United States District Court for the District of Columbia, this 6th day of May, 2014.

MONITOR

s/ Joseph A. Smith, Jr.
Joseph A. Smith, Jr.
P.O. Box 2091
Raleigh, NC 27602
Telephone:  (919) 825-4748
Facsimile:  (919) 825-4650
Email: Joe.smith@mortgageoversight.com

## CERTIFICATE OF SERVICE

I hereby certify that on this date I have filed a copy of the foregoing using the Court's CM/ECF system, which will send electronic notice of filing to the persons listed below at their respective email addresses.

This the 6th day of May, 2014.

/s/ Joseph A. Smith, Jr.
Joseph A. Smith, Jr.

## SERVICE LIST

| | | |
|---|---|---|
| **John M. Abel**<br>PENNSYLVANIA OFFICE OF<br>ATTORNEY GENERAL<br>Bureau of Consumer Protection<br>Strawberry Square<br>15th Floor<br>Harrisburg, PA 17120<br>(717) 783-1439<br>jabel@attorneygeneral.gov<br>*Assigned: 04/05/2012* | representing | **COMMONWEALTH OF**<br>**PENNSYLVANIA**<br>*(Plaintiff)* |
| **Nicklas Arnold Akers**<br>CALIFORNIA DEPARTMENT OF<br>JUSTICE<br>Office of the Attorney General<br>Public Rights Division / Consumer Law<br>Section<br>455 Golden Gate Avenue<br>Suite 11000<br>San Francisco, CA 94102<br>(415) 703-5505<br>Nicklas.Akers@doj.ca.gov<br>*Assigned: 04/21/2014* | representing | **STATE OF**<br>**CALIFORNIA**<br>*(Plaintiff)* |

**Ryan Scott Asbridge**
OFFICE OF THE MISSOURI
ATTORNEY GENERAL
P.O. Box 899
Jefferson City, MO 65102
(573) 751-7677
ryan.asbridge@ago.mo.gov
*Assigned: 10/03/2012*

representing

**STATE OF MISSOURI**
*(Plaintiff)*

**Jane Melissa Azia**
OFFICE OF THE NEW YORK
ATTORNEY GENERAL
Bureau Consumer Frauds & Protection
120 Broadway
New York, NY 10271
(212) 416-8727
jane.azia@ag.ny.gov
*Assigned: 10/02/2013*

representing

**STATE OF NEW YORK**
*(Plaintiff)*

**Douglas W. Baruch**
FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON LLP
801 17th Street, NW
Washington, DC 20006
(202) 639-7000
(202) 639-7003 (fax)
barucdo@ffhsj.com
*Assigned: 11/01/2012*

representing

**WELLS FARGO BANK
NATIONAL
ASSOCIATION**
*(Defendant)*

**Timothy K. Beeken**
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
(202) 909-6000
212-909-6836 (fax)
tkbeeken@debevoise.com
*Assigned: 05/02/2012*

representing

**J.P. MORGAN CHASE
& COMPANY**
*(Defendant)*

|  |  |  |
|---|---|---|
|  |  | **JPMORGAN CHASE BANK, N.A.** *(Defendant)* |
| **J. Matt Bledsoe** OFFICE OF ATTORNEY GENERAL 501 Washington Avenue Montgomery, AL 36130 (334) 242-7443 (334) 242-2433 (fax) consumerfax@ago.state.al.us *Assigned: 04/26/2012* | representing | **STATE OF ALABAMA** *(Plaintiff)* |
| **Debra Lee Bogo-Ernst** MAYER BROWN LLP 71 South Wacker Drive Chicago, IL 60606 (312) 701-7403 (312) 706-8474 (fax) dernst@mayerbrown.com *Assigned: 03/13/2014* | representing | **CITIBANK, N.A.** *(Defendant)* |
|  |  | **CITIGROUP, INC.** *(Defendant)* |
|  |  | **CITIMORTGAGE, INC.** *(Defendant)* |
| **Rebecca Claire Branch** OFFICE OF THE NEW MEXICO ATTORNEY GENERAL 111 Lomas Boulevard, NW Suite 300 Albuquerque, NM 87102 (505) 222-9100 rbranch@nmag.gov *Assigned: 10/04/2012* | representing | **STATE OF NEW MEXICO** *(Plaintiff)* |

**Nathan Allan Brennaman**
MINNESOTA ATTORNEY GENERAL'S
OFFICE
445 Minnesota Street
Suite 1200
St. Paul, MN 55101-2130
(615) 757-1415
nate.brennaman@ag.mn.us
*Assigned: 04/24/2012*

representing

**STATE OF
MINNESOTA**
*(Plaintiff)*

**Matthew J. Budzik**
OFFICE OF THE CONNECTICUT
ATTORNEY GENERAL
Finance Department
P. O. Box 120
55 Elm Street
Hartford, CT 06141
(860) 808-5049
matthew.budzik@ct.gov
*Assigned: 03/13/2012*

representing

**STATE OF
CONNECTICUT**
*(Plaintiff)*

**Elliot Burg**
VERMONT OFFICE OF THE
ATTORNEY GENERAL
109 State Street
Montpelier, VT 05609
(802) 828-2153
*Assigned: 03/13/2012*

representing

**STATE OF VERMONT**
*(Plaintiff)*

**Victoria Ann Butler**
OFFICE OF THE ATTORNEY
GENERAL, STATE FLORIDA
3507 East Frontage Road, Suite 325
Tampa, FL 33607
(813) 287-7950
Victoria.Butler@myfloridalegal.com
*Assigned: 03/13/2012*

representing

**STATE OF FLORIDA**
*(Plaintiff)*

| | | |
|---|---|---|
| **Nicholas George Campins**<br>CALIFORNIA DEPARTMENT OF<br>JUSTICE-OFFICE OF THE ATTORNEY<br>GENERAL<br>Public Rights Division/Consumer Law<br>Section<br>455 Golden Gate Avenue<br>Suite 11000<br>San Francisco, CA 94102<br>(415) 703-5733<br>Nicholas.Campins@doj.ca.gov<br>*Assigned: 03/19/2012* | representing | **STATE OF<br>CALIFORNIA**<br>*(Plaintiff)* |
| **Susan Ann Choe**<br>OHIO ATTORNEY GENERAL<br>150 E Gay Street<br>23rd Floor<br>Columbus, OH 43215<br>(614) 466-1181<br>susan.choe@ohioattorneygeneral.gov<br>*Assigned: 03/13/2012* | representing | **STATE OF OHIO**<br>*(Plaintiff)* |
| **Adam Harris Cohen**<br>NEW YORK STATE OFFICE OF THE<br>ATTORNEY GENERAL<br>Bureau of Consumer Frauds & Protection<br>120 Broadway<br>New York, NY 10271<br>(212) 416-8622<br>Adam.Cohen2@ag.ny.gov<br>*Assigned: 10/02/2013* | representing | **STATE OF NEW YORK**<br>*(Plaintiff)* |
| **John William Conway**<br>KENTUCKY ATTORNEY GENERAL<br>700 Captial Avenue<br>State Capitol, Suite 118<br>Frankfort, KY 40601<br>(502) 696-5300<br>susan.britton@ag.ky.gov<br>*Assigned: 09/04/2012* | representing | **COMMONWEALTH OF<br>KENTUCKY**<br>*(Plaintiff)* |

**Robert Elbert Cooper**
OFFICE OF THE TENNESSEE
ATTORNEY GENERAL
425 5th Avenue North
Nashville, TN 37243-3400
(615) 741-6474
bob.cooper@ag.tn.gov
*Assigned: 04/27/2012*

representing

**STATE OF TENNESSEE**
*(Plaintiff)*


**Gerald J. Coyne**
OFFICE OF THE ATTORNEY
GENERAL
150 South Main Street
Providence, RI 02903
(401) 274-4400 ext. 2257
gcoyne@riag.ri.gov
*Assigned: 03/13/2012*

representing

**STATE OF RHODE
ISLAND**
*(Plaintiff)*


**James Amador Daross**
OFFICE OF THE ATTORNEY
GENERAL OF TEXAS
401 E. Franklin Avenue
Suite 530
El Paso, TX 79901
(915) 834-5801
james.daross@oag.state.tx.us
*Assigned: 03/13/2012*

representing

**STATE OF TEXAS**
*(Plaintiff)*


**Brett Talmage DeLange**
OFFICE OF THE IDAHO ATTORNEY
GENERAL
Consumer Protection Division
700 W. Jefferson STreet
Boise, ID 83720
(208) 334-4114
bdelange@ag.state.id.us
*Assigned: 03/13/2012*

representing

**STATE OF IDAHO**
*(Plaintiff)*

**James Bryant DePriest**
ARKANSAS ATTORNEY GENERAL
Public Protection Department
323 Center Street
Suite 200                                        representing        **STATE OF ARKANSAS**
Little Rock, AR 72201                                                 *(Plaintiff)*
(501) 682-5028
jim.depriest@arkansasag.gov
*Assigned: 03/13/2012*


**Michael A. Delaney**
NEW HAMPSHIRE ATTORNEY
GENERAL'S OFFICE                                                     **STATE OF NEW**
33 Capitol Street                                representing        **HAMPSHIRE**
Concord, NH 03301                                                    *(Plaintiff)*
(603) 271-1202
*Assigned: 03/13/2012*


**Cynthia Clapp Drinkwater**
ALASKA ATTORNEY GENERAL'S
OFFICE
1031 W. 4th Avenue                                                   **STATE OF ALASKA**
Suite 300                                        representing        *(Plaintiff)*
Anchorage, AK 99501
(907) 269-5200
*Assigned: 03/13/2012*


**David Dunn**
HOGAN LOVELLS US LLP
875 Third Avenue                                                     **WELLS FARGO &**
New York, NY 10022                                                   **COMPANY**
(212) 918-3515                                   representing        *(Defendant)*
(212) 918-3100 (fax)
david.dunn@hoganlovells.com
*Assigned: 10/30/2013*

|  |  | **WELLS FARGO BANK, N.A.** *(Defendant)* |
|---|---|---|

**William C. Edgar**
UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Commercial Litigation Section
Frauds Section
601 D Street, N.W.
Room 9016
Washington, DC 20004
(202) 353-7950
(202) 616-3085 (fax)
william.edgar@usdoj.gov
*Assigned: 01/07/2014*

representing

**UNITED STATES OF AMERICA**
*(Plaintiff)*

**Parrell D. Grossman**
OFFICE OF THE ATTORNEY GENERAL
Consumer Protection and Antitrust Division
Gateway Professional Center
1050 E. Intersate Avenue
Suite 300
Bismarck, ND 58503-5574
(701) 328-3404
pgrossman@nd.gov
*Assigned: 03/13/2012*

representing

**STATE OF NORTH DAKOTA**
*(Plaintiff)*

**Deborah Anne Hagan**
ILLINOIS ATTORNEY GENERAL'S OFFICE
Division of Consumer Protection
500 South Second Street
Springfield, IL 62706
(217) 782-9021
dhagan@atg.state.il.us
*Assigned: 03/13/2012*

representing

**STATE OF ILLINOIS**
*(Plaintiff)*

**Christian Watson Hancock**
BRADLEY ARANT BOULT
CUMMINGS LLP
100 North Tryon Street
Suite 2690
Charlotte, NC 28202
(704) 338-6005
*Assigned: 10/16/2013*

representing

**WELLS FARGO &
COMPANY**
*(Defendant)*


**WELLS FARGO BANK,
N.A.**
*(Defendant)*


**Thomas M. Hefferon**
GOODWIN PROCTER LLP
901 New York Avenue
Washington, DC 20001
(202) 346-4000
(202) 346-4444 (fax)
thefferon@goodwinprocter.com
*Assigned: 09/12/2012*

representing

**COUNTRYWIDE
FINANCIAL
CORPORATION**
*(Defendant)*


**COUNTRYWIDE
HOME LOANS, INC.**
*(Defendant)*


**COUNTRYWIDE
MORTGAGE
VENTURES, LLC**
*(Defendant)*

**Charles W. Howle**
OFFICE OF THE ATTORNEY
GENERAL
100 North Carson Street
Carson City, NV 89701
(775) 684-1227
(775) 684-1108 (fax)
whowle@ag.nv.gov
*Assigned: 03/13/2012*

representing

**STATE OF NEVADA**
*(Plaintiff)*

**David W. Huey**
WASHINGTON STATE OFFICE OF THE
ATTORNEY GENERAL
Consumer Protection Division
P. O. Box 2317
1250 Pacific Avenue
Tacoma, WA 98332-2317
(253) 593-5057
davidh3@atg.wa.gov
*Assigned: 03/13/2012*

representing

**STATE OF
WASHINGTON**
*(Plaintiff)*

**David B. Irvin**
OFFICE OF VIRGINIA ATTORNEY
GENERAL
Antitrust and Consumer Litigation Section
900 East Main Street
Richmond, VA 23219
(804) 786-4047
dirvin@oag.state.va.us
*Assigned: 03/13/2012*

representing

**COMMONWEALTH OF
VIRGINIA**
*(Plaintiff)*

**Marty Jacob Jackley**
OFFICE OF ATTORNEY GENRERAL
1302 E. Highway 14
Suite 1
Pierre, SD 57501
(605) 773-4819
marty.jackley@state.sd.us
*Assigned: 03/13/2012*

representing

**STATE OF SOUTH
DAKOTA**
*(Plaintiff)*

**William Farnham Johnson**
FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON LLP
One New York Plaza
24th Floor                                    representing
New York, NY 10004
(212) 859-8765
*Assigned: 11/02/2012*
*PRO HAC VICE*

**WELLS FARGO BANK
NATIONAL
ASSOCIATION**
*(Defendant)*

**Abigail L. Kuzman**
OFFICE OF THE INDIANA ATTORNEY
GENERAL
Consumer Protection Division
302 West Washington Street                    representing
5th Floor
Indianapolis, IN 46204
(317) 234-6843
*Assigned: 03/13/2012*

**STATE OF INDIANA**
*(Plaintiff)*

**Matthew James Lampke**
OHIO ATTORNEY GENERAL
Mortgage Foreclosure Unit
30 East Broad Street
26th Floor                                    representing
Columbus, OH 43215
(614) 466-8569
matthew.lampke@ohioattorneygeneral.gov
*Assigned: 04/02/2012*

**STATE OF OHIO**
*(Plaintiff)*

**Brian Nathaniel Lasky**
NEW YORK STATE ATTORNEY
GENERAL'S OFFICE
Consumer Frauds and Protection Bureau
120 Broadway                                  representing
New York, NY 10271
(212) 416-8915
brian.lasky@ag.ny.gov
*Assigned: 10/02/2013*

**STATE OF NEW YORK**
*(Plaintiff)*

**Philip A. Lehman**
ATTORNEY GENERAL STATE OF
NORTH CAROLINA                          representing    **STATE OF NORTH**
P.O. Box 629                                           **CAROLINA**
Raleigh, NC 27602                                      *(Plaintiff)*
(919) 716-6050
*Assigned: 03/13/2012*


**Matthew H. Lembke**
BRADLEY ARANT BOULT
CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North                                **WELLS FARGO &**
Birmingham, AL 35203      representing                  **COMPANY**
(205) 521-8560                                         *(Defendant)*
205-521-8800 (fax)
mlembke@ba-boult.com
*Assigned: 10/16/2013*



                                                       **WELLS FARGO BANK,**
                                                       **N.A.**
                                                       *(Defendant)*


**Theresa C. Lesher**
COLORADO ATTORNEY GENERAL'S
OFFICE
1300 Broadway
Ralph L. Carr Colorado Judicial Center -               **STATE OF COLORADO**
7th Floor                 representing                  *(Plaintiff)*
Denver, CO 80203
(720) 508-6231
terri.lesher@state.co.us
*Assigned: 02/03/2014*

**Laura J. Levine**
OFFICE OF THE NEW YORK STATE
ATTORNEY GENERAL
Consumer Frauds & Protection Bureau
120 Broadway
New York, NY 10271
(212) 416-8313
Laura.Levine@ag.ny.gov
*Assigned: 10/02/2013*

representing

**STATE OF NEW YORK**
*(Plaintiff)*


**David Mark Louie**
STATE OF HAWAII DEPARTMENT OF
THE ATTORNEY GENERAL
425 Queen Street
Honolulu, HI 96813
(808) 586-1282
david.m.louie@hawaii.gov
*Assigned: 03/13/2012*

representing

**STATE OF HAWAII**
*(Plaintiff)*


**Robert R. Maddox**
BRADLEY AVANT BOULT
CUMMINGS LLP
1819 5th Avenue N
Birmingham, AL 35203
(205) 521-8000
rmaddox@babc.com
*Assigned: 05/07/2012*

representing

**ALLY FINANCIAL,
INC.**
*(Defendant)*


**GMAC MORTGAGE,
LLC**
*(Defendant)*


**GMAC RESIDENTIAL
FUNDING CO., LLC**
*(Defendant)*

**RESIDENTIAL
CAPITAL, LLC**
*(Defendant)*

**OCWEN LOAN
SERVICING, LLC**
*(successors by assignment
to Residential Capital, LLC
and GMAC Mortgage, LLC*

**GREEN TREE
SERVICING LLC**
*(successors by assignment
to Residential Capital, LLC
and GMAC Mortgage, LLC*

**WELLS FARGO &
COMPANY**
*(Defendant)*

**WELLS FARGO BANK,
N.A.**
*(Defendant)*

**Carolyn Ratti Matthews**
ARIZONA ATTORNEY GENERAL
1275 West Washington
Phoenix, AZ 85007                              representing    **STATE OF ARIZONA**
(602) 542-7731                                                *(Plaintiff)*
Catherine.Jacobs@azag.gov
*Assigned: 04/23/2012*

**Ian Robert McConnel**
DELAWARE DEPARTMENT OF
JUSTICE
Fraud Division
820 North French Street                    representing        **STATE OF DELAWARE**
Wilmington, DE 19801                                            *(Plaintiff)*
(302) 577-8533
ian.mcconnel@state.de.us
*Assigned: 03/13/2012*


**Robert M. McKenna**
WASHINGTON STATE OFFICE OF THE
ATTORNEY GENERAL
1125 Washington Street, SE                                      **STATE OF**
Olympia, WA 98504-0100                     representing        **WASHINGTON**
(360) 753-6200                                                 *(Plaintiff)*
Rob.McKenna@atg.wa.gov
*Assigned: 03/13/2012*


**Jill L. Miles**
WEST VIRGINIA ATTORNEY
GENERAL'S OFFICE
Consumer Protection Division
1900 Kanawha Boulevard East                                    **STATE OF WEST**
Capitol Complex, Building 1, Room 26E      representing        **VIRGINIA**
Charleston, WV 25305                                           *(Plaintiff)*
(304) 558-8986
JLM@WVAGO.GOV
*Assigned: 04/24/2012*


**Thomas J. Miller**
IOWA DEPARTMENT OF JUSTICE
Administrative Services
Hoover State Office Building                                    **STATE OF IOWA**
1305 East Walnut Street                    representing        *(Plaintiff)*
Des Moines, IA 50319
(515) 281-8373
*Assigned: 03/13/2012*

**Michael Joseph Missal**
K & L Gates
1601 K Street, NW
Washington, DC 20006
(202) 778-9302
202-778-9100 (fax)
michael.missal@klgates.com
*Assigned: 05/08/2012*

representing

**CITIGROUP, INC.**
*(Defendant)*

**WELLS FARGO & COMPANY**
*(Defendant)*

**WELLS FARGO BANK NATIONAL ASSOCIATION**
*(Defendant)*

**James Patrick Molloy**
MONTANA ATTORNEY GENERAL'S OFFICE
215 N. Sanders
Helena, MT 59601
(406) 444-2026
*Assigned: 03/13/2012*

representing

**STATE OF MONTANA**
*(Plaintiff)*

**Keith V. Morgan**
U.S. ATTORNEY'S OFFICE
Judiciary Center Building
555 Fourth Street, NW
Washington, DC 20530
(202) 514-7228
(202) 514-8780 (fax)
keith.morgan@usdoj.gov
*Assigned: 03/12/2012*

representing

**UNITED STATES OF AMERICA**
*(Plaintiff)*

**Lucia Nale**
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 701-7074
(312) 706-8663 (fax)
lnale@mayerbrown.com
*Assigned: 03/13/2014*

representing

**CITIBANK, N.A.**
*(Defendant)*

**CITIGROUP, INC.**
*(Defendant)*

**CITIMORTGAGE, INC.**
*(Defendant)*

**Carl J. Nichols**
WILMER CUTLER PICKERING HALE
& DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6226
carl.nichols@wilmerhale.com
*Assigned: 05/29/2013*

representing

**BAC HOME LOANS
SERVICING, LP**
*(Defendant)*

**BANK OF AMERICA
CORPORATION**
*(Defendant)*

**BANK OF AMERICA,
N.A.,**
*(Defendant)*

**COUNTRYWIDE BANK,
FSB**
*(Defendant)*

**Jennifer M. O'Connor**
WILMER CUTLER PICKERING HALE
& DORR
1875 Pennsylvania Avenue, NW
Washington, DC 20006                    representing
(202) 663-6110
(202) 663-6363 (fax)
jennifer.o'connor@wilmerhale.com
*Assigned: 04/25/2012*

**BANK OF AMERICA
CORPORATION**
*(Defendant)*


**BANK OF AMERICA,
N.A.,**
*(Defendant)*


**BAC HOME LOANS
SERVICING, LP**
*(Defendant)*


**COUNTRYWIDE BANK,
FSB**
*(Defendant)*


**Melissa J. O'Neill**
OFFICE OF THE NEW YORK STATE
ATTORNEY GENERAL
Consumer Frauds and Protection Bureau
120 Broadway                    representing
New York, NY 10271
(212) 416-8133
melissa.o'neill@ag.ny.gov
*Assigned: 10/02/2013*

**STATE OF NEW YORK**
*(Plaintiff)*

**D. J. Pascoe**
MICHIGAN DEPARTMENT OF
ATTORNEY GENERAL
Corporate Oversight Division
525 W. Ottawa
G. Mennen Williams Building, 6th Floor
Lansing, MI 48909
(517) 373-1160
*Assigned: 10/03/2012*

representing

**STATE OF MICHIGAN**
*(Plaintiff)*

**Gregory Alan Phillips**
WYOMING ATTORNEY GENERAL'S
OFFICE
123 State Capitol Building
Cheyenne, WY 82002
(307) 777-7841
greg.phillips@wyo.gov
*Assigned: 03/13/2012*

representing

**STATE OF WYOMING**
*(Plaintiff)*

**Andrew John Pincus**
MAYER BROWN, LLP
1999 K Street, NW
Washington, DC 20006
(202) 263-3220
(202) 263-3300 (fax)
apincus@mayerbrown.com
*Assigned: 01/21/2014*

representing

**CITIBANK, N.A.**
*(Defendant)*

**CITIGROUP, INC.**
*(Defendant)*

**CITIMORTGAGE, INC.**
*(Defendant)*

**Sanettria Glasper Pleasant**
DEPARTMENT OF JUSTICE FOR
LOUISIANA
1885 North Third Street
4th Floor                                 representing        **STATE OF LOUISIANA**
Baton Rouge, LA 70802                                         *(Plaintiff)*
(225) 326-6452
PleasantS@ag.state.la.us
*Assigned: 03/13/2012*


**Holly C Pomraning**
STATE OF WISCONSIN DEPARTMENT
OF JUSTICE
17 West MAin Street
Madison, WI 53707                          representing        **STATE OF WISCONSIN**
(608) 266-5410                                                *(Plaintiff)*
pomraninghc@doj.state.wi.us
*Assigned: 03/13/2012*


**Jeffrey Kenneth Powell**
OFFICE OF THE NEW YORK
ATTORNEY GENERAL
120 Broadway
3rd Floor                                  representing        **STATE OF NEW YORK**
New York, NY 10271-0332                                       *(Plaintiff)*
(212) 416-8309
jeffrey.powell@ag.ny.gov
*Assigned: 03/13/2012*


**Lorraine Karen Rak**
STATE OF NEW JERSEY OFFICE OF
THE ATTORNEY GENERAL
124 Halsey Street                                             **STATE OF NEW**
5th Floor                                  representing        **JERSEY**
Newark, NJ 07102                                              *(Plaintiff)*
(973) 877-1280
Lorraine.Rak@dol.lps.state.nj.us
*Assigned: 03/13/2012*

**J. Robert Robertson**
HOGAN LOVELLS US LLP
555 13th Street, NW
Washington, DC 20004
(202) 637-5774
(202) 637-5910 (fax)
robby.robertson@hoganlovells.com
*Assigned: 10/11/2013*

representing

**WELLS FARGO & COMPANY**
*(Defendant)*


**WELLS FARGO BANK, N.A.**
*(Defendant)*


**Corey William Roush**
HOGAN LOVELLS US LLP
555 13th Street, NW
Washington, DC 20004
(202) 637-5600
corey.roush@hoganlovells.com
*Assigned: 10/16/2013*

representing

**WELLS FARGO & COMPANY**
*(Defendant)*


**WELLS FARGO BANK, N.A.**
*(Defendant)*


**Bennett C. Rushkoff**
OFFICE OF THE ATTORNEY GENERAL
Public Advocacy Section
441 4th Street, NW
Suite 600-S
Washington, DC 20001
(202) 727-5173
(202) 727-6546 (fax)
bennett.rushkoff@dc.gov
*Assigned: 03/13/2012*

representing

**DISTRICT OF COLUMBIA**
*(Plaintiff)*

**William Joseph Schneider**
ATTORNEY GENERAL'S OFFICE
111 Sewall Street
State House Station #6
Augusta, MA 04333
(207) 626-8800
william.j.schneider@maine.gov
*Assigned: 03/13/2012*

representing

**STATE OF MAINE**
*(Plaintiff)*

**Mark L. Shurtleff**
160 East 300 South
5th Floor
P.O. Box 140872
Salt Lake City, UT 8411-0872
(801) 366-0358
mshurtleff@utah.gov
*Assigned: 03/13/2012*

representing

**STATE OF UTAH**
*(Plaintiff)*

**Abigail Marie Stempson**
OFFICE OF THE NEBRASKA
ATTORNEY GENERAL
COnsumer Protection Division
2115 State Capitol
Lincoln, NE 68509-8920
(402) 471-2811
*Assigned: 03/13/2012*

representing

**STATE OF NEBRASKA**
*(Plaintiff)*

**Meghan Elizabeth Stoppel**
OFFICE OF THE KANSAS ATTORNEY
GENERAL
120 SW 10th Avenue
2nd Floor
Topeka, KS 66612
(785) 296-3751
*Assigned: 03/13/2012*

representing

**STATE OF KANSAS**
*(Plaintiff)*

**Jeffrey W. Stump**
GEORGIA DEPARTMENT OF LAW
Regulated Industries
40 Capitol Square, SW                    representing          **STATE OF GEORGIA**
Atlanta, GA 30334                                              *(Plaintiff)*
(404) 656-3337
*Assigned: 03/13/2012*


**Michael Anthony Troncoso**
CALIFORNIA ATTORNEY GENERAL'S
OFFICE                                                        **STATE OF**
455 Golden Gate Avenue                                        **CALIFORNIA**
Suite 14500                              representing          *(Plaintiff)*
San Fransisco, CA 94102
(415) 703-1008
*Assigned: 03/13/2012*


**Amber Anderson Villa**
MASSACHUSETTS OFFICE OF THE
ATTORNEY  GENERAL
Consumer Protection Division
One Ashburton Place                                           **COMMONWEALTH OF**
18th Floor                               representing          **MASSACHUSETTS**
Boston, MA 02108                                              *(Plaintiff)*
(617) 963-2452
amber.villa@state.ma.us
*Assigned: 03/13/2012*


**Simon Chongmin Whang**
OREGON DEPARTMENT OF JUSTICE
Financial Fraud/Consumer Protection
1515 SW 5th Avenue
Suite 410                                representing          **STATE OF OREGON**
Portland, OR 97201                                            *(Plaintiff)*
(971) 673-1880
simon.c.whang@doj.state.or.us
*Assigned: 03/13/2012*

**Bridgette Williams Wiggins**
MISSISSIPPI ATTORNEY GENERAL'S
OFFICE
550 High Street
Suite 1100
Jackson, MS 39201
(601) 359-4279
bwill@ago.state.ms.us
*Assigned: 03/13/2012*

representing

**STATE OF MISSISSIPPI**
*(Plaintiff)*

**Amy Pritchard Williams**
K & L GATES LLP
214 North Tryon Street
Charlotte, NC 28202
(704) 331-7429
*Assigned: 11/02/2012*
*PRO HAC VICE*

representing

**WELLS FARGO BANK
NATIONAL
ASSOCIATION**
*(Defendant)*

**Alan McCrory Wilson**
OFFICE OF THE SOUTH CAROLINA
ATTORNEY GENERAL
1000 Aassembly Street
Room 519
Columbia, SC 29201
(803) 734-3970
*Assigned: 03/13/2012*

representing

**STATE OF SOUTH
CAROLINA**
*(Plaintiff)*

**Katherine Winfree**
OFFICE OF THE ATTORNEY
GENERAL OF MARYLAND
200 Saint Paul Place
20th Floor
Baltimore, MD 21201
(410) 576-7051
*Assigned: 03/13/2012*

representing

**STATE OF MARYLAND**
*(Plaintiff)*

**Alan Mitchell Wiseman**
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 662-5069
(202) 778-5069 (fax)
awiseman@cov.com
*Assigned: 01/29/2013*

representing

**CITIBANK, N.A.**
*(Defendant)*


**CITIGROUP, INC.**
*(Defendant)*


**CITIMORTGAGE, INC.**
*(Defendant)*


**Jennifer M. Wollenberg**
FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON, LLP
801 17th Street, NW
Washington, DC 20006
(202) 639-7278
(202) 639-7003 (fax)
jennifer.wollenberg@friedfrank.com
*Assigned: 11/06/2012*

representing

**WELLS FARGO BANK
NATIONAL
ASSOCIATION**
*(Defendant)*