ATTACHMENT 1
Florida Agreement

See attached

### Agreement between the Florida Attorney General and Servicers

The Attorney General of the State of Florida ("AG"), Bank of America Corporation, Wells Fargo & Company, and JPMorgan Chase & Co. ("Servicers") (collectively "the Parties"), in anticipation of entering into the National Servicing Agreement, hereby agree to the terms of the Florida Agreement attached hereto as Exhibit A, provided, however, that this agreement is conditioned on and is not effective until and unless:

(1) the AG reviews and approves the final and complete terms of the National Servicing Agreement; and

(2) the United States District Court for the District of Columbia has entered an order approving the National Servicing Agreement and that order has become final.

BANK OF AMERICA CORPORATION

Dated:  February ___, 2012          By:  _____

WELLS FARGO & COMPANY

Dated:  February ___, 2012          By:  _____

JPMORGAN CHASE & CO.

Dated:  February ___, 2012          By:  _____

Dated:  February _9_, 2012

_____
PAMELA JO BONDI
Attorney General of the State of Florida

_____
Patricia A. Conners
Associate Deputy Attorney General

Dated:  February _7_, 2012

FOR SETTLEMENT PURPOSES ONLY

### The Florida Agreement

- Agreement. Through this separate agreement, each of Bank of America, Wells Fargo and JPMorgan Chase agree to undertake a total of $4 billion of activities ($1.8 billion by Bank of America, $1.2 billion by Wells Fargo, and $1 billion by JPMorgan Chase) (as set forth below) with respect to mortgages on residential properties located in the State of Florida ("the Florida Agreement").

- Crediting Mechanism. Servicer shall receive credit against its obligations under the Florida Agreement for any principal reduction on first or second liens (including reductions through loan modifications, deeds in lieu or short sales), and deficiency waivers on Properties located in Florida, only to the extent that such activity would qualify for credit under the General Framework for Consumer Relief and Table 1 thereof. However, Servicer shall receive dollar for dollar credit for each such activity. There shall not be any percentage limits on the amount of credit available for any particular activity. In addition, Servicer shall receive credit for refinancings of loans if such activity would qualify for credit under the General Framework for Consumer Relief. Credit for such refinancings shall be determined based on the following formula: unpaid principal balance x reduction in interest rate as a result of the refinancing x 30.

  - Servicer will receive credit for first lien loan modification principal reduction on any loans in Servicer's entire portfolio, except for loans owned by the GSEs. First lien loan modification principal reductions shall be subject to the conforming/nonconforming limitations contained in the Consent Judgment. [Minimum 85% conforming]

  - Servicer will receive credit for second lien, short sale and deed-in-lieu principal reduction on any loans in Servicer's entire portfolio.

  - Servicer will receive credit for deficiency waivers on foreclosures or short sales occurring prior to the Start Date and during the term of the Agreement.

  - Servicer shall receive an additional 25% credit against its obligations under the Florida Agreement for any first lien principal reduction, deficiency waivers, or refinancings done within 12 months of the Start Date as set forth in the Consent Judgment (e.g., a $1 credit for Servicer activity would count as $1.25).

- Servicer shall complete 75% of its obligations under the Florida Agreement within two years of the Start Date, as set forth in the Consent Judgment, and 100% of its obligations under the Florida Agreement within three years of the Start Date. Servicer shall not receive credit for any funds provided by federal or state governmental entities, including but not limited to HAMP incentives.

- Payment for Failure to Meet Obligations under the Florida Agreement. If Servicer fails to meet its obligations under the Florida Agreement within three years of the Effective Date, Servicer shall pay to the Florida Attorney General ("FLAG") 50% of the unmet commitment amount, subject to a maximum payment of $70 million per servicer (or $105 million for Bank of America); except that if the Servicer fails to meet the two year 75% obligation noted above, and then fails to meet the three year 100% obligation, the Servicer shall pay to the FLAG an amount equal to 65% of the unmet three-year commitment amount, subject to a maximum payment of $70 million per servicer (or $105 million for Bank of America). If Servicer fails to meet both its obligations under the Florida Agreement and its commitment under the General Framework for Consumer Relief, Servicer shall pay to Florida an amount equal to the greater of (a) the amount owed to Florida under this provision; or (b) the amount owed to Florida under the General Framework for Consumer Relief, Section 10(d) (payment provisions). The purpose of all amounts payable hereunder is to induce Servicer to meet its obligations under the Florida Agreement and its commitment under the General Framework for Consumer Relief. The payment of such amount by Servicer to Florida shall satisfy Servicer's obligations to Florida under both the foregoing provision of the Florida Agreement and the General Framework for Consumer Relief, Section 10(d).

- Role of the Monitor. Each quarter, the Monitor shall determine the amount of Consumer Relief credit that Servicer has earned towards its obligations under the Florida Agreement. At the one-, two-, and three-year points, the Monitor shall determine the amount of Consumer Relief credit that Servicer has earned towards its obligations under the Florida Agreement and shall determine any payment owed pursuant to the above terms. Upon request of the Florida Attorney General, the Monitor shall provide all information in the Monitor's possession concerning relief provided in Florida by the Servicer. In addition, the Servicer shall provide to the Florida Attorney General such further information regarding relief provided in Florida as reasonably requested.

- Disputes. Disputes over the Monitor's reporting with respect to the Florida Agreement shall be resolved in the District Court for the District of Columbia. The Florida Attorney General may enforce any liquidated payment amount in Florida state court.

2